### DESTREHAN vs. SCUDDER.

A. having leased certain premises procures B. to become surety for the payment of the rent; and to indemnify the surety executes a mortgage on certain lands, by which he provides, "if he fail to pay the whole or any part of the rent, B. may sell," &c. A., alledging a failure on the part of the lessor to comply with the terms of the lease, refuses to keep the premises the full term, and to pay the entire rent, and B. becomes liable for the whole rent. A. having abandoned the possession, B. compromises with the lessor, and gives the lessor possession before the expiration of the lease. B. then advertises to sell under his mortgage. *Held:*

1. The lessor taking possession under such circumstances, does not release A. from the payment of the rent.

2. It appearing that the compromise was made by B. in good faith, although not binding on A., yet it being manifestly to his advantage, a court of equity will not restrain B. from enforcing his legal rights under the mortgage.

3. A mortgage, with a power to sell in the mortgagee, is valid.

4. A judgment of a foreign court, having jurisdiction of the persons and subject matter, is conclusive between the parties, in the courts of this State.

## APPEAL from Cape Girardeau Circuit Court.

BOGY & RANNEY, *for Appellant.*

1st. Could the chancery court entertain jurisdiction of this cause? Does it not come under either the heads of trust, fraud or accident, *or a case of extreme hardship?*

2nd. If the court entertained jurisdiction of the cause, was not the court bound, if any thing was found in favor of defendant, to enter a decree against plaintiff for the amount so found, and in what way to be made, instead of permitting defendant to get the same in the best way he could, like the present decree.

3rd. Could the difficulty, in relation to gas and want of repairs, between Scudder and Paulding, be inquired into in this suit; and was not those matters definitively settled in the suit of Scudder vs. Paulding, in Parish Court of New Orleans, the record of which is here in evidence?

4th. Was not the defendant entitled to a decree for the full amount paid by him for Scudder for the nine months rent, and interest thereon at ten per cent., after deducting the $112 57, made by attachment in New Orleans Parish Court?

5th. Did the court err in overruling the exceptions to the depositions taken on the part of John Scudder, taken by him in a suit of Destrehan vs. John Scudder, case in the St. Louis Court of Common Pleas, and afterwards suffering them to be read on the hearing of this cause.

CAMPBELL, *for Apellee.*

1st. The power of sale vested in the mortgagee without any proceeding for foreclosure, is contrary to the spirit of our laws, and contrary to public policy and void, and in all cases, a party

should be required to procure a decree of foreclosure before he undertakes to sell mortgaged pre mises, and for that reason the injunction should have been sustained as to the whole amount, as well as to a part of the sum claimed by Destrehan.

2nd. Destrehan, as the security of Scudder, gave his notes to Paulding for nine months rent of the Planters' Hotel, on a compromise, without the consent of Scudder, voluntarily, and at a time when he well knew that the Hotel had not been kept in tenantable order by Paulding, that it had been rendered unprofitable by the failure to obtain gas light for it, on account of the alledged indebtedness of Paulding to the Gas Light Company; that the Hotel had been abandoned by Scudder and tendered to Paulding, and that a suit had been instituted by Scudder against Paulding to cancel the contract, and obtain damages, and which suit was then still pending and undetermined; and under such a state of facts the security, Destrehan, cannot recover against Scudder, the principal, the amount which he has thus unlawfully volunnteered to pay, and for this reason the decree should have been to enjoin the said Destrehan altogether from selling said land.

3rd. Destrehan cannot recover from Scudder any part of the money which he claims to have paid for the rent of said Hotel from the first of May 'till the first of August, because on the first of May, Paulding, the landlord, took possession of the Hotel, with the consent and connivance of Destrehan, and continued to use, occupy and enjoy it from that time, on a compromise collusively made between Destrehan and Paulding, without the consent, and contrary to the wishes of Scudder, the principal. The sum of $1,875, thus unlawfully assumed by Destrehan before it was due, and for a space of time in which Paulding was in possession of the Hotel, could not be lawfully recovered by Destrehan from Scudder, even if his claims for the amount of the rent previous to the first of May, were just.

4th. Destrehan was not entitled to recover from Scudder any part of the money claimed by him, because it does not appear that he had paid to Paulding any part of the rent, not even the sum of $1,875, which had been advanced by Scudder for that purpose; but he merely executed to Paulding his individual note for the amount of nine months rent, which note did not amount to a payment or satisfaction of the debt, nor to a release to Scudder, and therefore he was not entitled as security to recover any thing from Scudder, the principal, nor to sell the land of Scudder; and the decree, for that reason, should have been to enjoin the sale entirely and absolutely.

5th. There appears to have been a fraudulent collusion between Destrehan and Paulding, to injure Scudder, as appears by the unlawful compromise between them in the absence of Scudder, by the attachment of Destrehan against Scudder, in which Paulding was his security, and under which a large amount of valuable property belonging to Scudder was seized, sold and sacrificed for a nominal sum; and by the fact that tne note of Destrehan was received by Paulding for the rent, instead of an actual payment, and by the general conduct of both of them after the departure of Scudder from New Orleans; and on account of this collusion they do not come into a court of equity with clean hands, and Destrehan is not entitled to the favorable consideration of the court.

6th. Even if it be lawful to execute a mortgage with a power of sale in the moitgagee, in cases where the power of sale depends on a failure to pay money directly, such a power ought not to be exercised, nor tolerated by the courts, when it depends on a contingent liability, or a failure to comply with the terms of a complicated covenant with a third party; and for that reason the said Destrehan had no right to sell without a decree of foreclosure, and the injunction should have been absolute for the entire amount claimed.

7th. Even if a power to sell under a mortgage reserving a power of sale in the mortgagee, may be sometimes lawfully exercised by the mortgagee, such power ought not to be exercised, nor its exercise permitted by the courts, in a case like this, in which a part of the money has been paid by the principal to the security; in which there was a suit pending by the principal to cancel the contract and avoid future payments; in which there had been a compromise between the security and the creditor without the consent of the principal; in which the debt had not been paid or satisfied by the security, but only arranged by the execution of his individual note; in which an

attachment had been issued by the security against the principal, and the property of the principal sold and sacrificed under the same, and in which the proceeding had been numerous and complicated; but in every such case the claimant should be required to foreclose his mortgage, either under the statute, or by a proceeding in chancery, so that it may be determined by a disinterested tribunal how much has been paid, and how much is still due, and whether a decree for the sale of the property is necessary or not.   For this reason the injunction should have been entire and absolute as to the whole amount.

8th.  The depositions offered by Scudder and objected to by Destrehan, were properly admitted, because, although taken in a different cause, yet they were duly taken between the same parties and in relation to the same subject matter of dispute.   The technical objections made thereto, were not sustained by the facts of the case, so far as appears by the bill of exceptions.

9th.  The deposition of the witness whose evidence was objected to on the ground that he was Scudder's security in the injunction bond, was properly admitted, because that deposition was taken between the same parties, and in relation to the same matter of dispute, long before he became security in the injunction bond, and at a time when that subsequent securityship could not have had any influence on his testimony.

10th.  The defendant, Destrehan, asked for no decree in his favor, for the sum of $1,875, nor does it appear from the record that he desired it.   He advertised to sell the land on his own authority, as the mortgagee, without asking for a decree of court: the court permitted him to go on with the remedy selected by himself, to the extent of $1.875, and no more.   Of this he has no right to complain, unless he can show that a larger sum was due to him.

11th.  Destrehan, as mortgagee, advertised for sale several tracts that were expressly reserved and excepted in the mortgage, as well as those conveyed by that instrument, and this justified an injunction.

NAPTON, J., *delivered the opinion of the Court.*

In January, 1843, Scudder filed his bill in chancery against Destrehan, in the Circuit Court of Cape Girardeau county.

The bill stated, that in October, 1840, the complainant rented of Cornelius Paulding, of New Orleans, a hotel in that city, called the Planters' Hotel, for one year from the 1st Nov. 1840, at the price of $7,500, payable in monthly instalments of $625 each; that the lease embraced the house, furniture and fixtures, and all the appurtenances and privileges appertaining to the same, and among others, the use of the gas tubes and pipes attached to the building; that it was also understood and agreed, that the building was to be kept in tenantable repair, and that said Destrehan became complainant's security on said lease.   The complainant, to secure Destrehan for this liability, executed a mortgage of certain lands in the counties of Perry and Cape Girardeau.   The bill alledges, that in consequence of Paulding's indebtedness to the Gas Light Company, the complainant was refused gas to supply the hotel, and that the upper rooms of the hotel were injured by leaks in the roof which let in the water, so that they were unfit for habitation; that in consequence of these injuries, he declined paying any rent to Paulding, but deposited

with Destrehan, as collateral security, the sum of $1,875, (three months rent,) and commenced a suit for damages against Paulding, which suit is averred to be still depending in the Supreme Court of Louisiana.— This conduct, it is averred in the bill, met with the decided approbation of Destrehan. In the month of April, 1840, the complainant gave Paulding notice, that his house was untenantable, and accordingly he left New Orleans for Perry county, in this State, where he has ever since resided, and on the 1st May, Paulding took possession. The bill then charges that Destrehan and Paulding combined against the complainant, and that Destrehan commenced a suit against him in the Parish Court of New Orleans for $3,750, in the progress of which the complainant's property was sacrificed, and that Paulding became Destrahan's security on the attachment bond in said suit. The bill further charges, that Destrehan afterwards, in Sept. '43, commenced another suit against complainant in St. Louis; and that still further to harrass him, he has given notice that he will sell at a time specified, the lands in Perry and Cape Girardeau, conveyed in the mortgage or deed of trust—and that he has advertised lands expressly excepted in the mortgage. The bill therefore prays a perpetual injunction upon this last proceeding.

Destrahan, in his answer, admits most of the facts as stated by Scudder. He admits, that his impression had been, that Paulding's conduct in relation to the gas and the repairs of the Hotel, had been such as to authorize Scudder to abandon the premises, but the decision of the Parish Court of New Orleans, afterwards affirmed by the Supreme Court of the State, he supposes was conclusive evidence against Scudder on these points, and made him liable for the whole years rent. The respondent admits that after Scudder left New Orleans, he notified Paulding that he desired a settlement, and proposed to pay him the six months rent, (during which time complainant had occupied,) but Paulding declined, on the ground that Scudder's occupancy had been during the business season in New Orleans, and he could not expect a proportionate rent for the summer months. Paulding was willing to compromise, by giving up three months rent and taking immediate possession, and this proposition Destrehan acceded to, believing, as he states, that he was liable for the whole year. The answer then avers, that Destrehan paid Paulding $5,625, being the rent for nine months, and deducting the $1,875 which Scudder had left with him, that Scudder was still indebted to him in the sum of $3,750. Destrehan admits that he commenced a suit in attachment against Scudder's effects in New Orleans, for this amount, but he only realized from this suit about $120 00. The answer

states, that this suit in New Orleans, and the one in St. Louis, were both terminated before he directed proceedings on the mortgage.    The answer disclaims all combination, &c.

The deed from Scudder to Destrehan was made an exhibit.    This deed was expressed to be given "to warrant said Destrehan against any loss, damage, costs or trouble, that he might be exposed to by our want of punctuality to fulfill our above mentioned engagements with Mr. Paulding, of New Orleans, he, said Destrehan, being our security for said monthly rent.    Now if the said Scudder should fail to pay the whole or any part of said rent, which he may stipulate to pay monthly to said Paulding, then the said Destrehan shall have power to put up six notices by six advertisements, severally to be put up at public places in said counties, of the time and place of sale of said lands, hereby transferred to him, and in accordance with said notices, shall sell at public auction to the highest bidder for cash, and after having executed a deed of transfer to the purchasers thereof, and having received the consideration thereof, he the said D. &c., after deducting the sum of money he may have had to pay in consequence of any failure that Scudder should make in the payment of the rent as above stipulated, and the interest of the same at the rate of ten per cent. from the time will have been paid by him, said D., will refund the balance to said S., or his heirs and assigns."

The decision of the Supreme Court of Louisiana, made the 15th May, 1843, affirming the judgment of the Parish Court of New Orleans in the suit of Scudder against Paulding, for annulling the lease and for damages to the amount of $6000, was made an exhibit by defendant in his answer.

The papers exhibited by defendant show, that on the 27th April, 1841, Destrehan and Paulding compromised, by Paulding's accepting Destrehan's obligation to pay nine months rent, and Destrehan's giving possession on the 1st May.

Sundry depositions were filed in the cause by the complainant, which had been originally filed in the suit instituted by Destrehan against Scudder, in the St. Louis Court of Common Pleas.    Objections were made to these depositions, but the objections were overruled.    The depositions related entirely to the supposed breach of covenants in the lease from Paulding to Scudder; in the failure of gas, and in the injury to the attic rooms of the Planters' Hotel by the insufficiency of the roof.    It appeared that Scudder had applied to the Gas Light Company for a supply of gas for the Hotel, and offered to pay the price, but was refused, on the ground of a previous indebtedness to the company by Paulding.    This

withdrawal of the gas lights, usual in the hotels of that city, the witnesses agreed, was a serious drawback upon Scudder's profits. The injury to some of the rooms, by the rain, was also proved to have been considerable.

Upon the hearing, the bill, answer and exhibits, and these depositions, were read. The plaintiff also gave in evidence the record of the attachment case in New Orleans, of Destrehan vs. Scudder, and the record of the proceedings of the Common Pleas of St. Louis, in the case of Destrehan vs. Scudder. The defendant gave in evidence the record of the proceedings in the Parish Court of New Orleans, of the case of Scudder vs. Paulding. This was a petition to the Parish Court of New Orleans by Scudder, to annul the lease from Paulding to himself, on account of the injuries to the upper rooms of the Hotel, and the failure to procure gas, and for $6000 damages. The decision of the court was against Scudder on both grounds. The court held, that Paulding had not bound himself in the lease that the Gas Light Company should furnish the Hotel with gas, and that apart from the lease, there was no principle of law by which Paulding could be held responsible for the conduct of the Gas Light Company, there being, in fact, a suit pending between the company and him in relation to the alledged indebtedness of Paulding to the company. The court further held, that inasmuch as the Louisiana code contained a provision authorizing a lessee to repair the leased premises, and charge the cost of repair to the lessor, the want of repair was no ground for damages, much less for rescinding the contract. The judgment of the Parish Court was therefore for the defendant.

The court dissolved the injunction as to $1,750 43, with ten per cent. interest thereon from the 1st May, 1841, and made the injunction perpetual as to the residue.

The defendant moved to set aside this decree, and for a rehearing, but the motion was overruled, and a bill of exceptions was taken, preserving all the testimony.

There are several questions in this case, which we think have already been definitively settled by the courts of Louisiana. The right of Scudder to abandon his lease, because of the difficulties he encountered in procuring gas for his Hotel, and the injury he believed himself to have sustained, by reason of defects in the roof of that building, is a matter which has once been litigated by the complainant in a form of his own selection, and cannot be again investigated. The Constitution of the United States has provided, that full faith and credit shall be given in each State, to the public acts, records and judicial proceedings of every

·other State, and has authorized Congress to prescribe the manner in which this object shall be attained. Under the act of 1790, in which Congress designed to carry out this constitutional provision, it has been settled, that a judgment of one of the State courts, where the subject matter and the parties are within its jurisdiction, cannot be questioned in the court of another State, upon any other grounds than such as would affect its validity in the State where the judgment is pronounced. With this principle engrafted into our federal jurisprudence, having already taken strong root in the international law of most civilized countries, it could not be doubted, that a judgment in a sister State would be a complete bar to the plaintiff seeking to litigate the same cause of action before one of our tribunals. Apart from any constitutional or legislative provision on the subject, I apprehend the question is equally well settled by the law of nations, as understood and enforced in countries where the common law prevails. Differences of opinion have prevailed as to the mode and extent to which the courts of one country would *enforce* the judgments pronounced in those of another and foreign jurisdiction; but where a defendant sets up a foreign judgment as a bar—it having been pronounced by a competent tribunal and carried into effect—it has never been doubted that the losing party cannot institute a suit elsewhere, and thus bring the matter again into controversy. It is *res adjudicata*, and is conclusive. Phillips vs. Hunter, 2 H. Black, 410; Story's Conflict of Laws, § 598.

The question, then, in relation to the admissibility of the depositions, which had been taken in the action brought by Destrehan in the St. Louis Court of Common Pleas, is unimportant—for all the depositions were exclusively upon the matters which had been settled in the action brought by Scudder in the Parish Court of New Orleans against Paulding.

The complaints of the bill on the ground of the failure of Paulding to have the roof of the Planters' Hotel secured, and because of the refusal of the Gas Light Company to furnish that Hotel with gas, can furnish no grounds to this Court for declaring the lease vacated or forfeited, or any justification to Scudder for acting upon the idea that he was released from its covenants. No other grounds are alledged in the bill, and we must therefore conclude, that Scudder was responsible for the whole years rent, unless Paulding's taking possession on the first of May released him from that liability.

The principal, I may say, the only difficulty in the case, arises out of the compromise between Destrehan and Spaulding. Had no compromise

been effected, and no possession taken under it by Paulding, it is clear that Scudder would have been liable, under his lease, for the years' rent. At least nothing appears to the contrary.

That this compromise was not binding on Scudder, is manifest. It was made without his consent, either express or implied. But the court are not asked to enforce it. Destrehan is not seeking the interposition of a court of equity, but relies upon his rights under the mortgage. Scudder is the party complaining, and in order to justify an interposition in his behalf, the Court must be satisfied that it would be productive of injustice to allow Destrehan to proceed in enforcing his legal rights. The question is not simply as to the authority of Destrehan in making the compromise, but the situation and character of Destrehan, and the circumstances under which the compromise was made, are certainly to be regarded.

It is alledged in the bill, that the compromise was fraudulent—but there is no shadow of proof either direct or circumstantial on the subject. The answer is unequivocal in denying the fraud.

Was it an unfair or disadvantageous compromise? It would seem not. If Scudder was responsible for the whole year's rent, amounting to $7,000, having actually occupied the premises for six months, is it probable that the lessor would suffer him to quit the premises in May, when the business season in New Orleans was nearly over, paying only the six months rent? Was it unreasonable for the security, under the circumstances, believing himself and his principal responsible for the whole year's rent, to compromise by paying the rent for nine months? If the rent were to be apportioned by a court, would this apportionment seem unreasonable or unfair? Surely not. Let it be recollected that Scudder had taken the house for a year, although the installments were due monthly—that Scudder had occupied the hotel, which must have been a large one, from the first of November to the first of May—that the remaining six months, from May to October inclusive, would cover the sickly season in New Orleans—and it must be obvious that the house could not rent for the last six months for anything near the sum it had rented for during the winter and spring months. There is certainly nothing in the terms of the compromise to indicate anything like fraud or unfairness. On the contrary, it seems to be decidedly beneficial to Scudder.

Paulding's taking possession of the hotel on the first of May was in consequence and by virtue of this compromise with Destrehan. Had Paulding taken possession under other circumstances, it would doubtless have released Scudder's liability for subsequent rent; but Paulding re-

fused to take possession until he was secured in the payment of nine months' rent. If there was any reason to believe that this compromise was a collusive one, a court of equity would not hesitate to disregard it. But we have nothing to indicate such collusion, except in the charges of the bill. Destrehan may have acted hastily and without the greatest prudence. The parish court of New Orleans had determined Scudder's liability for the whole year's rent. As Scudder had taken the case up to the appellate court, and thereby evinced an intention of adhering to the prosecution, Destrehan was certainly not warranted in undertaking a compromise without first consulting Scudder. But the compromise was made; without it, Scudder would have been ultimately liable for the year's rent;—as it was, Paulding took possession at the end of six months, but not until he had secured the payment for nine months. Paulding is therefore safe, and the loss of the three months' rent must fall on Scudder, or his security, Destrehan. Where shall it fall : on Scudder, who, without the compromise, would have had to pay the rent for the entire year, or upon Destrehan, who made the compromise without authority, but, so far as appears, in good faith and with the best intentions?

Assuming that the compromise between Paulding and Destrehan was without authority and not binding upon Scudder, how would the liability of Scudder stand? His responsibility for the whole year's rent is fixed, unless he can avail himself of the possession taken by Paulding *under the compromise* as a discharge. Would a court of equity permit him to do this where the compromise appeared fair and without collusion and advantageous to him? Shall he be permitted to repudiate so much of the compromise as he pleases, but avail himself of that part of the arrangement which may favor his interests ? Can Scudder, in a court of equity, avail himself of this act of Paulding, without, at the same time, taking the burden of Destrehan's liability for the three additional months rent, without which there is no reason to suppose the possession would have been taken ? It would be hard for a mere security to be a loser in a transaction where his conduct had been untainted with fraud and obviously advantageous to his principal. It must be recollected that Scudder had left New Orleans in April, without leaving any funds in Destrehan's possession to pay the three months' rent which was clearly due, and that Destrehan had every reason to expect that nine months' rent would fall upon him. It is true that Scudder had given him a mortgage upon lands in Missouri to indemnify him against loss, but the value of such an indemnity depends on circumstances. Destrehan may not have been informed of the value of these lands, and, at all events, the ultimate suffi-

ciency of the indemnity might have proved a very inadequate compensation for an immediate payment or sacrifice of property. His solicitude to compromise with Paulding was therefore very natural, and when the court can now see that the compromise was really a beneficial one to his principal, the security should not suffer by it.

The appellant complains that the court made no decree for the amount of the rent not enjoined, but no such decree was asked for. The defendant did not file any cross bill.

The fact that it does not appear that Destrehan has ever been compelled to pay any money for Scudder, might be very material, if Destrehan were seeking the interposition of the court. Destrehan is merely pursuing his legal remedies. The deed from Scudder to him provides, that "if the said Scudder should *fail to pay the whole or any part* of said rent, which he may stipulate to pay monthly to said Paulding, then he, said D., shall have power to sell," &c. This contingency, according to the statements of the bill itself, has occurred. Besides, the bill does not seek any relief on this ground. Undoubtedly, if Destrehan is not compelled to pay anything, Scudder would be entitled to relief—but the question is not presented by the present state of the pleadings.

In relation to the question concerning the validity of mortgages containing a power of sale in the mortgagee, there is no disposition on the part of the court now to disturb the former adjudications of this court.

The decree of the Circuit Court is reversed, and it is ordered, adjudged and decreed that the bill of complainant be dismissed.