**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Respondent,**

v.

**Katie Mae HOWLETT, Appellant.**

No. 58499.

Supreme Court of Missouri, En Banc.

March 10, 1975.

Rehearing Denied April 14, 1975.

Charles F. Crews, Alan E. South, Crews & Milliard, Kansas City, for respondent.

James L. Muller, The Legal Aid and Defender Society of Greater Kansas City, Inc., Kansas City, for appellant.

FINCH, Judge.

The issue presented by this appeal is whether various statutory provisions relating to the foreclosure of mortgages and deeds of trust under power of sale (§§ 443.290, 443.310, 443.320, 443.380, and 443.-410) [1] are unconstitutional on the basis that they violate the due process clause of the fourteenth amendment to the United States Constitution and Art. I, § 10 of

1. All statutory references are to RSMo 1969 unless indicated otherwise.

the Missouri Constitution, V.A.M.S.[2] The trial court declined to hold these statutory provisions unconstitutional. Instead its judgment awarded possession to respondent in its unlawful detainer action and denied relief to appellant on her counterclaim for declaratory judgment relief under §§ 527.-010 et seq. and 527.150 et seq. We affirm.

On August 3; 1970, appellant purchased and received a warranty deed to a house and lot in Kansas City. She made a down payment of $200 and gave an installment note for $13,400 for the balance of the purchase price. That note was secured by a deed of trust executed on a standard FHA form as required for FHA insurance, a prerequisite of the loan. The note was payable in monthly installments of $98.36 of which appellant was to pay $81.-48, the remainder being paid by the government under a subsidy program. Immediately following execution, the note and deed of trust were assigned by the payee therein to respondent, a government sponsored private corporation organized under the National Housing Act to purchase and otherwise deal in federally insured home mortgages and deeds of trust.

Beginning in February, 1972, appellant fell behind in her monthly payments on the note held by respondent. On May 9, 1972, the successor trustee (named pursuant to provisions of the deed of trust) mailed to appellant by ordinary mail a notice of default and of intention to commence foreclosure proceedings. Appellant testified that she never received the trustee's letter of May 9, 1972, but did receive a subsequent letter dated May 23, 1972, from an assistant collection manager for respondent. That letter mentioned that the foreclosure sale would be held June 15, 1972, and that appellant would be expected to

vacate the premises if she did not bring the loan to a current status by June 15, 1972.

The deed of trust given by appellant contained a power of sale clause which provided in part as follows:

"NOW, THEREFORE, * * * if default be made in the payment of said note herein provided, * * * then the whole of said note and interest thereon to date of foreclosure shall become due and payable and this deed shall remain in force; and said Trustee or his successor as hereinafter provided for, at the request of the legal holder of the aforesaid note, may proceed to sell the property hereinbefore conveyed, or any part thereof, at public vendue at the north front door of the Jackson County Circuit Court House in the City of Kansas City in the County of Jackson, and State of Missouri, to the highest bidder for cash, first giving twenty days public notice of the time, terms, and place of sale and of the property to be sold by advertisement in some newspaper published in said Jackson County, Missouri, and upon such sale shall execute a deed conveying the property so sold to the purchaser thereof."

Pursuant to the foregoing provision, publication of notice of a proposed trustee's sale was commenced May 21, 1972. That notice, which advised that the sale would be held June 15, 1972, was published in the Daily Record, a daily newspaper published in Kansas City, and appeared in 21 consecutive issues of the paper.

Appellant did not pay up the delinquent installments on her loan, and on June 15, 1972, the foreclosure sale was held as

---

**2.** Section 1 of the fourteenth amendment to the United States Constitution, insofar as pertinent, provides as follows:

"* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Art. I, § 10, of the Missouri Constitution states:

"That no person shall be deprived of life, liberty or property without due process of law."

advertised.[3] The property was purchased by respondent for $13,856.49, and a trustee's deed to respondent was executed by the trustee. Thereafter, on August 16, 1972, respondent filed an unlawful detainer action in magistrate court. Appellant filed an answer plus a counterclaim (under the declaratory judgment law) which asserted that the published notice of sale, the actual foreclosure sale and the trustee's deed were pursuant to and in compliance with Missouri statutes relating to foreclosure of mortgages and deeds of trust, under color of which the sale and trustee's deed purported to be valid and binding. The statutes in question were claimed to operate to deprive a person of property without legally sufficient notice or a meaningful opportunity for a hearing prior to foreclosure, thereby violating the due process clauses of the federal and state constitutions. The court was requested to declare the statutes unconstitutional and the trustee's deed void. These questions were not within the jurisdiction of the magistrate court and the case was certified to the circuit court for trial.

■ The threshold question we must determine is whether the foreclosure of the deed of trust on appellant's property involved significant state action. This is so because the due process clause of the fourteenth amendment establishes a limitation on the states, not on individuals. Hence, whether the amendment is applicable in a given situation depends on whether sufficient state action is involved. In order to decide that question in this case, we must examine both the legislative and judicial history in Missouri of foreclosure under power of sale clauses contained in mortgages and deeds of trust.

Extrajudicial foreclosure developed during the early part of Missouri's statehood. In Carson v. Blakey, 6 Mo. 273 (1840), the Supreme Court dealt with the foreclosure of a mortgage which had been carried out by the trustee pursuant to a power of sale in the mortgage. The court recognized that Missouri's statutes at that time provided for and authorized only judicial foreclosure [4] but concluded that the law did not prohibit property owners from contracting for alienation of their property by means of sale under a power of sale inserted in the mortgage. The court sustained such a foreclosure under power of sale. The validity of foreclosure under such a contractual power of sale again was recognized in Stine v. Wilkson, 10 Mo. 75 (1846), and Destrehan v. Scudder, 11 Mo. 484 (1848).

The first Missouri statute pertaining to extrajudicial foreclosure came in 1855 with the enactment of Chapter 113, RSMo 1855. Section 20 of that act (presently § 443.290) provided that such power of sale and sales made pursuant thereto would be valid and binding. The Missouri General Assembly thereby gave legislative recognition to what judicial decisions such as Carson, Stine and Destrehan already had established, namely, that parties could authorize extrajudicial foreclosure by including a power of sale in their mortgages and that foreclosures pursuant thereto were valid.

The earliest statute which actually undertook to regulate sales of real estate under powers of sale in mortgages and deeds of trust was enacted in 1885. Laws, 1885, p. 208. This act (presently §§ 443.310 and 443.320) provided that sales of real estate under powers of sale in mortgages or deeds of trust should be made in the county where the land was situated, that notices of such sales should contain certain information and that the notices should be published in the manner and for the number of times specified, giving at least twenty days notice of the sale.

3. On that date appellant delivered to the trustee a notice of intention to redeem. However, she did nothing further to carry out such intention and did not redeem.

4. RSMo 1825, p. 593. Previously, the territorial laws of Missouri also provided only for judicial foreclosure. See Act of October 20, 1807, 1 Terr.Laws of Missouri, pp. 182–83, §§ 1, 3.

Citing and relying on the foregoing statutes, appellant contends in her brief that state action was present in the foreclosure of the deed of trust on her property because "the trustee's power to sell the property and to execute a valid trustee's deed is made legally possible only by the authority with which the state has clothed him under the foreclosure statute."

The fact is that the power of sale exercised by the trustee was not derived from the statute nor granted by the state. It is a contractual right established by the power of sale provision in the deed of trust. That instrument, a contract executed by the parties, specifically provided for extrajudicial foreclosure. The contractual nature of such power of sale has been recognized repeatedly in decisions in this state. Abrams v. Lakewood Park Cemetery Ass'n, 355 Mo. 313, 196 S.W.2d 278 (1946); Adams v. Boyd, 332 Mo. 484, 58 S.W.2d 704 (1933); Kelsay v. Farmers' & Traders' Bank, 166 Mo. 157, 65 S.W. 1007 (1901); Spires v. Lawless, 493 S.W.2d 65 (Mo.App.1973). See also Logan v. Short, 342 F.Supp. 1349 (E.D.Mo.1972).

■■■ Analysis of the language of the statutory sections cited by appellant confirms the correctness of this view. Section 443.290 neither compels the inclusion of a power of sale in a mortgage or deed of trust nor has the effect of inserting such a clause when not put therein by the parties. It simply recognizes the validity of such provisions. Sections 443.310 and 443.320 merely regulate such foreclosures by requiring the sale to be held in the county where the land is located and specifying when and how the notice is to be published and what it shall contain. Section 443.380 makes recitals in the trustee's deed prima facie evidence and § 443.410 places deeds of trust on an equivalent status with mortgages insofar as foreclosure pursuant to

power of sale is concerned and provides a method of and time for redemption from an extrajudicial foreclosure sale. None of these sections provide the legal basis for the foreclosure which occurred herein. They merely give recognition to foreclosures accomplished pursuant to a contractual right and establish minimum standards which must be met if there is to be foreclosure pursuant to a contractual power of sale.

It is of interest to note that California has had a similar history with reference to the use of extrajudicial foreclosure pursuant to a contractual power of sale. No California statute relating to extrajudicial foreclosure existed until 1872, when the California legislature enacted a law that recognized the validity of such foreclosures. See California Civil Code, § 2932. However, such a method was judicially recognized as early as 1859. Koch v. Briggs, 14 Cal. 256 (1859). It was not until 1917 that statutes regulating contractual powers of sale were enacted. California Civil Code, § 2924. In spite of the enactment of these statutory provisions, the California courts continued to recognize that the power to foreclose by extrajudicial procedure under a power of sale was contractual and not derived from the statutory enactments. Thus, in Davidow v. Corporation of America, 16 Cal.App.2d 6, 60 P.2d 132, 135 (1936), the court said:

"Appellants apparently assume that the power of sale, exercised by a trustee under a deed of trust given to secure an obligation, is derived from the section [2924] which is attacked upon constitutional grounds. The power of sale exercised by such trustee is not derived from said section but from the deed of trust. That section is merely a limitation upon the power of sale where 'a power of sale is conferred' by a deed of trust." [5]

5. Appellants in this case had gone first to the federal courts with the claim that the foreclosure under the power of sale clause in the deed of trust was done under § 2924 of the Civil Code and deprived appellant of his property without due process. The court

dismissed the action for lack of jurisdiction, holding that the foreclosure was pursuant to contract and was not the act of California or its agents. Davidow v. Lockman Brothers Investment Co., 76 F.2d 186 (9th Cir. 1935).

It necessarily follows that appellant argues from a false premise when she asserts that the power and authority of the trustee herein to conduct the sale of appellant's property and to execute a valid trustee's deed was derived from state law. The right was contractual, not statutory, as the courts of this state and of California have recognized. Such a power of sale in a deed of trust would authorize extrajudicial foreclosure even if there were no statutory provisions such as those in Missouri and California. This is demonstrated by the earlier decisions in both states which sustained extrajudicial foreclosures pursuant to contractual powers of sale at a time when neither state had any statute either recognizing or regulating extrajudicial foreclosure. Carson v. Blakey, *supra*; Stine v. Wilkson, *supra*; Destrehan v. Scudder, *supra*; Koch v. Briggs, *supra*. This fact was recognized by the federal court in Logan v. Short, *supra*, when, in considering an attack by the plaintiff on extrajudicial foreclosure under a Missouri deed of trust with power of sale, the court said, 342 F.Supp. at 1351: " * * * [A]bsent the statutes, the right of defendants to foreclose without court action would be precisely the same, inasmuch as the foreclosure is *contractual* and not statutory."

■ We hold that the foreclosure of the deed of trust on appellant's property was pursuant to the contractual provisions in the deed of trust and not by authority of state law. It follows that appellant's contention that state action was present on the theory that the power of sale exercised by the trustee was conferred by state statute is overruled.

■ Relying on several decisions of the Supreme Court of the United States, appellant argues that even if the foreclosure herein was carried out pursuant to contractual rather than statutory authorization, still the foreclosure involved significant state action which would make the federal due process clause applicable. This is true, she says, because the state by its statutes

relative to extrajudicial foreclosure has substantially encouraged utilization of this procedure.

The case principally relied on by appellant to support this theory of state action through "encouragement" is Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L. Ed.2d 830 (1967). At issue therein was the validity of a California constitutional amendment which provided that the state and its subdivisions could do nothing to limit or interfere with the right of a property owner to decline to sell or rent real estate to such persons as the owner might choose. This initiative proposal (Proposition 14) was submitted and approved by the voters after the state legislature had enacted statutes which outlawed discriminatory practices in the sale and rental of housing. The Mulkeys sued Reitman under the latter statutes, contending that Reitman had refused to rent an apartment to them by reason of their race. The trial court granted summary judgment to Reitman on the basis that the state statutes under which the Mulkeys were proceeding had been rendered void by Proposition 14. The Supreme Court of California reversed, holding Proposition 14 unconstitutional under the equal protection clause of the fourteenth amendment. Mulkey v. Reitman, 64 Cal.2d 529, 50 Cal.Rptr. 881, 413 P.2d 825 (1966). The Supreme Court of the United States affirmed. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). In the course of the majority opinion, Mr. Justice White noted that the California Supreme Court had "concluded that a prohibited state involvement could be found 'even where the state can be charged with only encouraging,' rather than commanding discrimination." 387 U. S. at 375, 87 S.Ct. at 1631.

In discussing and interpreting Reitman, appellant's brief concludes that "(T)he Supreme Court found 'state action' in the fact that although the private discrimination was not commanded, the enactment of this section encouraged and thus significantly involved the state in the challenged con-

duct." Actually, Reitman was not a case in which the Supreme Court found state action simply on the basis that a state constitutional provision was thought to have encouraged state action. An examination of the opinion discloses that the California court held that Art. I § 26 of the California Constitution (adopted as Proposition 14) did more than simply repeal previously enacted fair housing legislation, the court saying, 387 U.S. at 376, 87 S.Ct. at 1632:

> "* * * [I]t held the intent of § 26 was to authorize private racial discriminations in the housing market, to repeal the Unruh and Rumford Acts and to create a constitutional right to discriminate on racial grounds in the sale and leasing of real property. Hence, the court dealt with § 26 as though it expressly authorized and constitutionalized the private right to discriminate. Third, the court assessed the ultimate impact of § 26 in the California environment and concluded that the section would encourage and significantly involve the State in private racial discrimination contrary to the Fourteenth Amendment."

Thereafter, in Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed. 2d 142 (1970), the Supreme Court clearly rejected the proposition that state action will be found merely from so-called encouragement resulting from a state statute. In Adickes, a white customer was denied service in a restaurant because she was in the company of blacks. She brought action claiming that state action was present in that the action of Kress in denying service was encouraged by a law of the state of Mississippi which provided that a firm engaged in a business, trade or profession was authorized to select persons with whom to do business and that such firm could refuse to sell to, wait upon or serve anyone. The language in the Mississippi statute closely resembled that of Proposition 14 in the California case of Reitman v. Mulkey, except that it did not have the effect of prohibiting future legis-

lative action. The court declined to find state action.

The conclusion that statutory authorization, and the encouragement allegedly given thereby, does not result in state action finds support in cases involving the Uniform Commercial Code.

The case of Adams v. Southern California National Bank, 492 F.2d 324 (9th Cir. 1973), involved appeals from two California district court cases rendering conflicting interpretations regarding the Uniform Commercial Code (as adopted in California). In Adams v. Egley, 338 F.Supp. 614 (S.D.Cal.1972), a creditor utilized a provision in a mortgage it held to repossess by self-help a motor vehicle described in the mortgage. The Southern District Court, relying largely on Reitman v. Mulkey, held that the commercial code provision set forth the policy of the state of California, that it authorized the private conduct whereby the motor vehicle was repossessed, that the security agreement which incorporated the authorized provisions was an embodiment of state policy and that the repossession thereunder was under color of state law. On that basis the court found the state action necessary to invoke the due process clause of the fourteenth amendment. On the other hand, cases from the Northern District Court reached the opposite result. Oller v. Bank of America, 342 F.Supp. 21 (N.D.Cal.1972).

The Ninth Circuit reversed the judgment of the Southern District and affirmed the case from the Northern District, holding that there was not significant state involvement in these self-help repossessions. The court said, 492 F.2d at 330:

> "* * * The test if not state involvement, but rather is significant state involvement. Statutes and laws regulate many forms of purely private activity, such as contractual relations and gifts, and subjecting all behavior that conforms to state law to the Fourteenth Amendment would emasculate the state

action concept. Further inquiry needs to be made into the relationship between creditors and the State to see whether the State is significantly involved or entangled in the challenged repossessions, or whether mutual benefits are conferred which would lead to a finding of a 'symbiotic relationship' between creditors and the State that was present in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), but was absent in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972)."

The debtors in both cases contended:

" * * * [T]hat the involvement of the state is reflected by thê enactment of §§ 9503 and 9504 of the Commercial Code, which put into statutory form the right of creditors to repossess without judicial process, restrict the procedures to be used on default, and authorize a deficiency judgment. They also state that the Rees-Levering Act regulates all aspects of motor vehicles sales pursuant to retail installment contracts, that repossessors are required to be licensed, and that California clears the title to repossessed vehicles for the creditors. These state laws, they continue, set out a clear policy, authorizing and encouraging the use of self-help remedies which significantly involves California in the challenged activity." 492 F.2d at 331.

In overruling these contentions, the court said, 492 F.2d at 332:

"The present cases present at least two distinguishing features. First, the State in *Reitman* was involved to a far greater degree in the challenged conduct, because the proposition approved there had been initiated for the purpose of authorizing what had before been expressly prohibited, and if enacted would raise a barrier to the realization of a constitutional goal. This finding was made by the California Supreme Court, and on appeal the Supreme Court found no persuasive considerations upon which to overturn the judgment of the California court. In these self-help cases, the enactment of the provisions of the Uniform Commercial Code did not reverse the law as it had been prior to the enactment of the Code, but merely codified existing law for the most part. This is particularly true for the creditor's remedy of self-help repossession.

"Second, and consistent with the reasoning of several other courts, we are not convinced that the resolution of the state action question involving prejudgment self-help repossession of secured property is controlled by a case involving racial discrimination. Unlike *Reitman*, there has been no finding that it was the intent of the State in passing § 9503 to authorize any conduct that would violate the Fourteenth Amendment. And unlike racial discrimination cases in general, which have evidenced a pattern of intentional indirect circumvention of constitutional rights, these creditor remedies were based on economically reasoned grounds of very long standing, which appear to have been the topic of extensive research and legislative investigation."

See also Gibbs v. Titelman, 502 F.2d 1107 (3d Cir. 1974); Nichols v. Tower Grove Bank, 497 F.2d 404 (8th Cir. 1974); Nowlin v. Professional Auto Sales, Inc., 496 F.2d 16 (8th Cir. 1974); James v. Pinnix, 495 F.2d 206 (5th Cir. 1974); Shirley v. State National Bank of Connecticut, 493 F.2d 739 (2d Cir. 1974); Bichel Optical Laboratories v. Marquette National Bank, 487 F.2d 906 (8th Cir. 1973). On November 11, 1974, certiorari was denied in Adams v. Southern California National Bank, *supra*, Shirley v. State National Bank of Connecticut, *supra*, and Nowlin v. Professional Auto Sales, Inc., *supra*. 419 U.S. 1006, 1009, 95 S.Ct. 325, 328, 329, 42 L.Ed. 2d 282–84 (1975).

The question of whether encouragement is a sound basis for a finding of state action is explored in Burke & Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth

Amendment, 46 So.Cal.L.Rev. 1003 (1973), and 47 So.Cal.L.Rev. 1 (1973). The authors conclude, after discussing Reitman, Adickes and other cases, that a state statute which authorizes and thereby encourages private conduct does not automatically render that conduct state action under the fourteenth amendment. Using California statutory law as examples, the article points out that state law has an impact upon almost every form of private conduct. The same would be true with respect to Missouri. For example, statutes cover the execution of a will, the execution of contracts, the formation of corporations, the formation of partnerships, the transfer of real and personal property, and many other areas of private conduct. In the sense that the statutes authorize and regulate private conduct, it may be said that they encourage such conduct. Yet the authors conclude that the mere fact that said statutes authorize private conduct does not convert the acts of those individuals into state action.

The article goes on to point out that the theory of finding state action from authorization and encouragement by the state of private conduct, if valid, would also apply to authority and encouragement supplied by judicial decisions. In rejecting the idea that state action is to be found on that basis, the authors say, 46 So.Cal.L.Rev. at 1106:

"The fallacy in the thesis that action authorized or encouraged by state law is fourteenth amendment state action is most readily apparent when one considers the impact of judicial law. It is almost impossible to consider any form of activity that is not somehow authorized by state decisional law. As demonstrated above, most forms of planned behavior have reference to the authority provided by state law, and the great bulk of that authority is supplied by judicial decisions. The proposed argument would convert the doctrine of *stare decisis* into a vehicle to channel all private ordering into the federal courts for fourteenth

amendment constitutional review, since that doctrine supplies judicial law with an authoritative basis. The most dramatic illustration of this is the Supreme Court's *Moose Lodge* decision, which in effect authorized private clubs to discriminate in their guest policies under the fourteenth amendment. Applying the authorization or encouragement theory, the very issuance of the decision by the Court would create the necessary federal action to bring the fifth amendment into play, since any future private discrimination would be authorized and encouraged by federal judicial law. The fourteenth amendment analogy to state decisional law is obvious."

In summarizing and explaining their conclusion that mere authorization and resulting encouragment does not result in private action becoming state action, the authors state, 46 So.Cal.L.Rev. at 1109:

"In determining whether fourteenth amendment state action is present, the focus should always be upon the actual impact of the state law upon the choice to engage in the private conduct. Unless the state law dictates the choice to be made by the party or in some way significantly interferes with the free exercise of that choice, the private conduct and state law are not subject to constitutional restraints under the fourteenth amendment. State laws of a permissive character which authorize private conduct, and because of such authorization perhaps also encourage such conduct, do not satisfy the fourteenth amendment's state action requirement. To adopt 'authorization' or 'encouragement' in this context as a relevant state action inquiry would subject virtually every form of private ordering pursuant to state statutory, executive and judicial law to constitutional review in the federal courts. And, by establishing the fourteenth amendment as a source of federal judicial regulation over private conduct, it would also seriously undermine each

of the institutional values served by the state action limitation on the reach of that amendment."

Appellant also asserts that state action is to be found from the fact that the courts of Missouri are made available to enforce rights secured by the extrajudicial foreclosure and that on this basis state statutes with reference to such foreclosures should be held unconstitutional under the fourteenth amendment. We reject this contention. The courts play no part in the foreclosure proceedings. The contract between the parties provides for extrajudicial foreclosure and specifies the procedure to be followed. The trustee named in the deed of trust (or his duly designated successor) gives notice of the foreclosure, arranges publication in the newspaper, conducts the sale, executes and delivers the deed and disburses the money. No state agent is involved and no state action is present in these activities.

As a result of the acts of the trustee pursuant to the contract between the parties, title to the property passes to the purchaser by virtue of the trustee's deed and the purchaser becomes entitled to possession of the property. The acquisition of these rights is complete without any court action of any kind. The only utilization of the state courts occurs when and if the mortgagor or someone in possession subsequently refuses to surrender possession pursuant to the trustee's deed and suit is filed by the purchaser in order to enforce his right to possession. In such suit the owner seeks only to enforce the contractual rights he previously acquired by virtue of the foreclosure sale conducted by the trustee.

Whenever a contract of any kind is breached, a method of enforcement available to the injured party is by action in the courts. If the fact that one of the parties to the contract has the right to resort to the courts to enforce his rights thereunder means that what the parties did to create those rights becomes state action,

it is obvious that almost every kind of individual endeavor would be subject to constitutional review under the fourteenth amendment.

We do not believe that the cases on which appellant relies support the conclusion that mere availability of the courts means that the actions of the individuals with respect to the contract in question involve state action. One of the cases relied on by appellant is Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). In that case the Supreme Court found state action in enforcement by the courts of racially restrictive convenants. Petitioners, who were black, purchased real property in violation of a covenant limiting use and possession of property to Caucasians. Owners of other land in the tract brought suit to divest petitioners of title and to restrain them from taking possession. The Supreme Court said that the restrictive covenants alone did not violate petitioners' federal constitutional rights nor would private enforcement thereof. It held, however, that a suit to enforce the covenant constituted sufficient state action to involve the fourteenth amendment. The court's opinion stressed the purpose of the fourteenth amendment to eliminate racial discrimination and held that the court's injunctive action interfered with petitioner's right to acquire, own, enjoy and dispose of real property.

Shelley was applied in Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), in which plaintiff sought damages against a white person who had breached her restrictive covenant by selling her property to non-Caucasians. The Supreme Court affirmed a judgment wherein a demurrer to the petition had been sustained, but it affirmed the holding in Shelley that the existence or private enforcement of the covenant would not be state action.

Understandably, appellant urges that Shelley and Barrows establish that utilization by respondent mortgage association of

the courts to enforce its right to possession amounts to state action. However, Shelley and Barrows have not been extended into the area of extrajudicial foreclosure and subsequent decisions appear to have limited their application even in cases of racial discrimination. For example, in Evans v. Abney, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed. 2d 634 (1970), the court was dealing with a case involving a tract of land conveyed to a city for use as a park for white people only. In an earlier case the Supreme Court held that the city could not continue to operate the park on a racially discriminatory basis. Thereafter, the Georgia Supreme Court held that the sole purpose for which the trust was created had become impossible of performance and hence had terminated with the result that the property reverted to the grantor. Petitioners then contended that termination of the trust violated their fourteenth amendment rights. The Supreme Court refused to apply Shelley, holding that the racial restrictions were the act of the donor, not the state or its agents, and that the elimination of the park terminated discrimination. The action of the Georgia court in so decreeing was not state action.

Shelley and Barrows have been discussed at some length by numerous commentators.[6] Suffice it to say that we conclude that they are distinguishable from the instant case and that they do not dictate a reversal of the judgment herein.

Another line of cases relied on by appellant commences with the case of Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). It involved a Wisconsin prejudgment garnishment statute. Acting thereunder, the clerk of the court on application of the creditor's attorney issued a summons to garnishee directing it to make no payments (except subsistence allowances) to the defendant until further order of the court.

The funds thereby sought to be tied up were not monies to which the creditor had any contractual rights but rather were funds which it sought to tie up by statutory garnishment prior to obtaining judgment. The Supreme Court, after finding that this direct action by the court officer pursuant to and based upon the state prejudgment garnishment statute constituted state action, concluded that the Wisconsin statute and the procedure thereunder failed to satisfy due process requirements of the fourteenth amendment. That case simply is not comparable on the facts to the case with which we now deal. It involved direct action by a state agent to enforce rights conferred by the state and not by any individual agreement by the parties.

Sniadach was followed by Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed. 2d 556 (1972), wherein the Supreme Court dealt with a case in which a creditor brought a replevin action to obtain a stove and stereo set pursuant to a conditional sales contract which provided that on default the seller could take back the merchandise. Acting under a Florida statue which permitted a party, without a hearing or any prior notice, to obtain a prejudgment writ of replevin on the basis of an ex parte application to the clerk of the court, plus the posting of a bond, the sheriff seized the property under the writ issued by the clerk. Relying on Sniadach, the court held that the prejudgment replevin statutory provisions resulted in a deprivation of property without due process of law.

There has been considerable debate as to the effect of Fuentes. It was a 4–3 decision, with Justices Powell and Rehnquist not participating. Subsequently, in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974), the court reviewed a Louisiana statute which provided that when one claims ownership or right to possession of property or a mort-

6. See Burke & Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment, 46 So.Cal.L.Rev. 1003, 1086–91 (1973). See also a discussion of these and other cases in First Nat'l Bank v. Danforth (Mo., filed Jan. 13, 1975).

gage thereon, the plaintiff may seek a writ of sequestration to seize the goods pending a trial on the merits. W. T. Grant Co. utilized the statute, filing a verified complaint which alleged that it had reason to believe that defendant would dispose of the property pending the suit. It then filed a bond and after the judge signed a sequestration order, the property was seized by the constable. The defendant then filed a motion to dissolve the writ, alleging a violation of due process. The court, in a 6–3 decision, held that the Louisiana statute did not violate the due process clause of the fourteenth amendment. In the majority opinion, Mr. Justice White distinguished the case from Fuentes. However, Mr. Justice Powell expressed the view that the effect of Mitchell was to overrule Fuentes. Whether or not that is true, it seems clear that Mitchell at the least has restricted Fuentes.[7]

In addition, in this unlawful detainer action by respondent there was no seizure of property prior to a judicial hearing. Instead, respondent instituted suit in the magistrate court seeking possession pursuant to the trustee's deed received following the foreclosure sale. Appellant was served with process and a trial was held. We conclude and hold that Sniadach and Fuentes are not authority for giving appellant relief or for holding the Missouri extrajudicial foreclosure statutes involved a denial of due process.

The conclusion we reach herein is supported by the recent case of Bryant v. Jefferson Federal Savings & Loan Association, 509 F.2d 511 (D.C.Cir. 1974), in which the court upheld the constitutionality of the District of Columbia's extrajudicial mortgage foreclosure procedures. Plaintiffs in that case claimed that the power of

sale clause in the deed of trust which they executed was authorized by sections of the District of Columbia Code and constituted governmental action. Plaintiffs relied principally on Sniadach and Fuentes in contending that prejudgment seizures violate due process. The court concluded that the statute did not create a power of sale and that extrajudicial foreclosure was permissible only if authorized in the deed of trust. The Court found no significant state action.[8]

■ In addition to asserting that the Missouri extrajudicial foreclosure statutes violate the fourteenth amendment, appellant also claims that they do not satisfy the due process requirements of Art. I, § 10 of the Missouri Constitution. It is settled that this provision of the Missouri Constitution is a protection against state governmental action through executive, legislative or judicial authority and that it is not applicable to acts of individuals as they affect rights of other individuals. Junkins v. Local Union No. 6313, 263 S.W.2d 337 (Mo.1954), appeal transferred, 241 Mo.App. 1029, 271 S.W.2d 71 (1954). Accordingly, for the reasons assigned in discussing applicability of the fourteenth amendment, we find no state action and that for this reason Art. I, § 10 does not apply.

Judgment affirmed.

All concur.

PER CURIAM.

■ In her motion for rehearing, appellant observes that in discussing the effect of Fuentes v. Shevin, *supra*, in the light of Mitchell v. W. T. Grant Co., *supra*, the court made no reference to and was unaware of the decision in North Georgia

7. Mitchell is discussed in Wiesman, Prehearing Seizures, 30 J.Mo.B. 474 (1974).

8. 61 A.B.A.J. 236 (1975). We have found two federal district court decisions upholding extrajudicial foreclosure and two which hold to the contrary. Those sustaining such foreclosures are Hoffman v. HUD, 371 F.

Supp. 576 (N.D.Tex.1974), and Global Indus., Inc. v. Harris, 376 F.Supp. 1379 (N.D. Ga.1974). Those holding to the contrary are Northrip v. Federal Nat'l Mortgage Ass'n, 372 F.Supp. 594 (E.D.Mich.1974), and Garner v. Tri-State Dev. Co., 382 F. Supp. 377 (E.D.Mich.1974).

Finishing, Inc. v. Di-Chem, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751, decided on January 22, 1975. The opinion in that case does cite and rely on Fuentes, thereby indicating, as both Mr. Justice Stewart and Mr. Justice Powell observe, that Fuentes has not been overruled. However, appellant's motion does not point out wherein North Georgia Finishing dictates any different result herein and we conclude that Fuentes, even resuscitated thereby, does not require a reversal herein. Appellant's motion for rehearing is overruled.