[S.F. No. 23658. May 16, 1978.]

SUSAN GARFINKLE et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
WELLS FARGO BANK et al., Real Parties in Interest.

**COUNSEL**

Kipperman, Shawn, Keker & Brockett, Steven M. Kipperman, Friedman & Sloan, Stanley J. Friedman and Gary Garfinkle for Petitioners.

Victor Harris, David Schuricht, John Le Veck and Charles Wolfinger as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

David W. Lennihan, David J. Brown and Brobeck, Phleger & Harrison for Real Parties in Interest.

Severson, Werson, Berke & Melchior, James B. Werson, Dennis M. Talbott, Lawrence A. Hobel, Edgar B. Washburn, Mary Beth Uitti, Carol Sanger, Landels, Ripley & Diamond, Harry D. Miller, Miller, Starr & Regalia, McKenna & Fitting, Aaron M. Peck, Alan H. Holmberg, Edmond M. Connor and Mona D. Miller as Amici Curiae on behalf of Real Parties in Interest.

**OPINION**

**MANUEL, J.**—This petition for writ of mandate challenges the constitutionality of California's procedure for the nonjudicial foreclosure of

deeds of trust on real property. Petitioners contend that this procedure permits the deprivation of the trustor's property without adequate notice or hearing in violation of the due process guarantees of the Fourteenth Amendment to the United States Constitution and of article I, section 7 of the California Constitution. ██ We conclude, in agreement with the decisions which have considered this question in relation to California's nonjudicial foreclosure procedure (*Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866 [105 Cal.Rptr. 395]; *U.S. Hertz, Inc.* v. *Niobrara Farms* (1974) 41 Cal.App.3d 68 [116 Cal.Rptr. 44]; *Davidow* v. *Corporation of America* (1936) 16 Cal.App.2d 6 [60 P.2d 132]; *Davidow* v. *Lachman Bros. Inv. Co.* (9th Cir. 1935) 76 F.2d 186; *Lawson* v. *Smith* (N.D.Cal. 1975) 402 F.Supp. 851) and in accord with the overwhelming majority of decisions which have considered this question in relation to similar nonjudicial foreclosure procedures of other jurisdictions,[1] that California's procedure constitutes private, not state action and is therefore exempt from the due process constraints of the federal Constitution. ██ We also conclude that the private action herein involved does not satisfy the state action requirement of the due process clause of the state Constitution.

In January 1970, petitioners Susan and Gary Garfinkle (the Garfinkles) purchased a family residence from the Lannings, whose loan on the property was secured by a deed of trust in favor of Wells Fargo Bank (Bank). This deed of trust contained a standard due-on-sale clause which provided that the Bank could accelerate the balance due on the loan if the Lannings sold the property without the written consent of the Bank. The deed of trust also contained a power of sale clause which provided in part as follows: "If default be made in the payment of said promissory note . . . or in case any change is made in the title to all or any part of the said property . . . all sums hereby secured shall, at the election of the Bank, forthwith become due and payable, without notice, and the Bank may cause the said property to be sold in order to accomplish the object of these trusts, and upon demand of the Bank the Trustee shall sell the whole, or such portion of the said property as the Trustee shall deem necessary to accomplish the purposes of these trusts, and such sale may be made in any manner provided by law, and if none is provided, then by

[1]*Kennebec* v. *Bank of the West* (1977) 88 Wn.2d 718 [565 P.2d 812]; *Federal National Mortgage Ass'n.* v. *Howlett* (Mo. 1975) 521 S.W.2d 428; *Coffey Enterprises & Co.* v. *Holmes* (1975) 233 Ga. 937 [213 S.E.2d 882]; *Armenta* v. *Nussbaum* (Tex.Civ.App. 1975) 519 S.W.2d 673; *Levine* v. *Stein* (4th Cir. 1977) 560 F.2d 1175; *Barrera* v. *Security Building & Investment Corporation* (5th Cir. 1975) 519 F.2d 1166; *Northrip* v. *Federal Nat. Mtg. Ass'n* (6th Cir. 1975) 527 F.2d 23; *Bryant* v. *Jefferson Federal Savings and Loan Ass'n* (D.C.Cir. 1974) 509 F.2d 511.

first giving notice of the time and place of sale in the manner and for a time not less than that now required by law for the sale of real property on execution . . . ."

The Bank offered to let the Garfinkles assume the Lanning loan at an increased rate of interest in return for the Bank's agreement not to accelerate the balance due on that loan pursuant to the due-on-sale clause. The Garfinkles refused to assume the Lanning loan on these terms. Thereafter, the Bank notified both the Lannings and the Garfinkles that it had accelerated the Lanning loan and that the balance owing thereon was due and payable in its entirety. In June 1970 when the balance due had not been paid, the Bank recorded its notice of default as required by section 2924 of the Civil Code. The Lannings and Garfinkles received actual notice of the Bank's notice of default. The Garfinkles then brought a series of legal actions[2] challenging both the constitutionality of California's nonjudicial foreclosure procedure and the validity of the automatic enforcement of the due-on-sale clause; and culminating in the present action seeking declaratory relief on both of these issues in respondent Contra Costa County Superior Court. The Bank filed a general demurrer to the Garfinkles' complaint. Respondent sustained the demurrer without leave to amend as to the constitutional challenge to the nonjudicial foreclosure procedure on the ground that no state action was involved.[3]

After decision by this court in *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803 [132 Cal.Rptr. 477, 553 P.2d 637], in which we

---

[2]Petitioners first brought an action for declaratory and injunctive relief in the United States District Court for the Northern District of California. This action was dismissed for want of subject matter jurisdiction. Petitioners appealed this judgment of dismissal and the Ninth Circuit Court of Appeals reversed, holding that petitioners had raised a substantial federal question. (*Garfinkle* v. *Wells Fargo Bank* (9th Cir. 1973) 483 F.2d 1074.) After observing that *Strutt* v. *Ontario Sav. & Loan Assn., supra,* 28 Cal.App.3d 866, was not dispositive of all of the constitutional issues presented by the Garfinkles, the Ninth Circuit ordered the district court to abstain and directed the Garfinkles to file an action in state court to resolve the issues. Petitioners thereupon filed a petition for an original writ of mandate in the California Court of Appeal which was denied on the ground that insufficient reason was shown why the action should be heard by the reviewing court and not by the lower court. (Cal. Rules of Court, rule 56(a)(1). After their petition for hearing was denied by this court, petitioners commenced the present action in superior court.

[3]Respondent overruled the Bank's demurrer as to the cause of action challenging the validity of the automatic enforcement of the due-on-sale clause. That question, which is presently before this court in *Wellenkamp* v. *Bank of America,* L.A. 30776 (hg. granted May 5, 1977), is thus not at issue in the instant petition. Respondent has not yet taken any action on petitioners' motion to maintain this action as a class action, and therefore, that issue is also not before us in this proceeding.

held that California's mechanic's lien and stop notice laws constituted state action, respondent, at the Garfinkles' request reconsidered its previous ruling on the state action question. Respondent then entered a new order, again sustaining the demurrer without leave to amend.[4] ■ ■■■ By this petition for mandate the Garfinkles seek review of the trial court's order.[5]

The statutory provisions regulating the nonjudicial foreclosure of deeds of trust on real property are contained in Civil Code sections 2924-2924h.[6] Basically, these provisions require that before the trustee, acting under a power of sale contained in the deed of trust, can sell the subject trust property, the trustee must first record a notice of default setting forth the nature of the default and the election to exercise the power of sale. (§ 2924.)[7] If the trustor (borrower) has recorded a request for notice or if

[4]In view of the fact that petitioners had no immediate remedy by appeal, and because of the broad public interest in the merits of the constitutional question presented, we granted a hearing and issued an alternative writ of mandate following the denial of a petition for writ of mandate by the Court of Appeal.

[5]Throughout the protracted course of this litigation the Bank has voluntarily refrained from selling the Garfinkle's home and has agreed to accept monthly payments from the Garfinkles under the terms of the Lanning loan until this litigation is resolved. Until recently it was thought that federal law prohibited a state court from enjoining a national bank such as Wells Fargo prior to final judgment in any state court action. (12 U.S.C. § 91; *Crocker Nat. Bank* v. *Superior Court* (1977) 68 Cal.App.3d 863, 872 [136 Cal.Rptr. 481].) The United States Supreme Court, however, has made clear that 12 United States Code section 91 does not apply to a debtor's action seeking a preliminary injunction against a national bank to protect his real property from wrongful foreclosure. (*Third National Bank* v. *Impac Limited, Inc.* (1977) 432 U.S. 312 [53 L.Ed.2d 368, 97 S.Ct. 2307].) Therefore, this remedy coupled with an action for declaratory relief on the question of default is now available to protect against a trustee's sale of the trustor's property while the question of default is being litigated.

[6]All references are to the Civil Code unless otherwise indicated.

[7]Section 2924 provides in relevant part: "Where in any transfer in trust made after July 27, 1917, of [specified estates in real property] . . . a power of sale is conferred upon the . . . trustee, or any other person, to be exercised after a breach of the obligation for which such . . . transfer is a security, such power shall not be exercised . . . until (a) the trustee . . . or beneficiary, shall first file for record, in the office of the recorder of each county wherein the . . . trust property or some part or parcel thereof is situated, a notice of default, . . . setting forth the nature of such breach and of his election to sell or cause to be sold such property to satisfy the obligation, . . . (b) not less than three months shall thereafter elapse; and (c) after the lapse of the three months the . . . trustee or other person authorized to make the sale shall give notice of sale, stating the time and place thereof in the manner and for a time not less than that set forth in Section 2924f. A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices for which requests have been recorded or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with such requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice."

the deed of trust contains a request for notice,[8] the trustee is required to mail a copy of the notice of default to the trustor at the address specified in the recorded request or in the deed of trust. (§ 2924b, subd. (3)(b).)[9]

After the notice of default has been recorded, the trustee must allow three months to elapse, during which time, the trustor may "cure" the default and reinstate the deed of trust, where reinstatement is possible. (§ 2924c.)[10]

Upon expiration of this 90-day period, the trustee must then post a written notice of sale in a conspicuous place on the property at least 20 days prior to the date of sale (§ 2924f), and must mail a copy of this notice of sale to the trustor if notice has been requested.[11] The trustee can then proceed to sell the property. There is no statutory provision for a judicial determination, prior to the sale, of the validity of the alleged default.

The property must be sold by public auction to the highest bidder (§ 2924h)[12] to whom title is transferred by a trustee's deed. Thereafter, upon recording of this deed, the purchaser is entitled to bring an unlawful detainer action against the trustor in order to get possession of the property. (Code Civ. Proc., § 1161a.)

[8]In 1972, section 27321.5 of the Government Code was amended to require that all deeds of trust and mortgages with a power of sale upon real property must specify the trustor's address and contain a request for a copy of any notice of default and of sale.

[9]By amendment effective July 1977, section 2924b, subdivision (3)(b) requires that notice also be sent to the trustor's successor in interest, the beneficiary's assignee, the vendee of any contract of sale and lessee of any lease, or their successors in interest, of the estate being foreclosed.

[10]By amendment, effective July 1, 1974, section 2924c, subdivision (b)(1) was added, which requires that the notice of default include a statement indicating that certain defaults may be cured, and a warning that if such defaults are not cured within the three-month period following the recording of the notice, the right to reinstatement will terminate and the property may be sold.

[11]During the 110-day period that must elapse between the recording of the notice of default and the sale of the property, the trustor's right to possession and use of the property remains undisturbed. Also, the trustor's title to the property remains unaffected by the recorded notice of default which does not constitute constructive notice of any adverse claim thereto. (§ 2924b, subd. (5), as amended.)

[12]When property is sold by nonjudicial foreclosure, section 580d of the Code of Civil Procedure prohibits deficiency judgments against the trustor for the amount owed on the promissory note if that amount is greater than the amount for which the property was sold at the trustee's sale.

Petitioners contend that this nonjudicial procedure violates procedural due process under both the federal and state Constitutions because it deprives real property owners of their property without adequate notice and without a judicial hearing, thus coming within the scope of the decisions in *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] and its progeny.[13]

We first turn to petitioner's federal constitutional claim. The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . ."

■ "The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property, without due process of law; but it adds nothing to the rights of one citizen as against another." (*United States* v. *Cruikshank* (1875) 92 U.S. 542, 554 [23 L.Ed. 588, 592].) The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." (*Shelley* v. *Kraemer* (1948) 334 U.S. 1, 13 [92 L.Ed. 1161, 1180, 68 S.Ct. 836, 842].) ■ The question presented here, as in all actions challenged under the Fourteenth Amendment, is whether "there is a sufficiently close nexus between the State and the challenged action . . . so that the action . . . may be fairly treated as that of the State itself." (*Jackson* v. *Metropolitan Edison Co.* (1974) 419 U.S. 345, 351 [42 L.Ed.2d 477, 484, 95 S.Ct. 449].) Thus, the threshold question which we must determine is whether the state is

[13]With regard to the notice provisions, petitioners claim that even though all deeds of trust must now include a request for notice, this protection (which is only applicable to deeds after 1972) is often inadequate because the statute requires only that the trustee send a copy of the notice of default and sale to the address specified in the deed of trust (or in the recorded request if one has been made). If this address is no longer accurate, there is no statutory requirement that the trustee attempt to ascertain the trustor's present address (for instance, by requesting this information if it is available from the lender). Thus, petitioners and amicus California Rural Legal Assistance Foundation argue that a property owner who has moved and has neglected to record the change of address, or who was unaware that he should have requested notice in the first place, might not receive any notice of the lender's claim that he is in default, with the result that the 90-day period within which he may have a right to cure the default might elapse without his knowledge.

With regard to the lack of a judicial hearing, petitioners claim that the availability of declaratory and injunctive relief is inadequate because these collateral judicial remedies are discretionary and thus do not insure that the property owner will certainly get a hearing prior to the sale of his property. (See *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 309 [138 Cal.Rptr. 53, 562 P.2d 1302]; *Adams* v. *Department of Motor Vehicles* (1974) 11 Cal.3d 146, 156 [113 Cal.Rptr. 145, 520 P.2d 961, 64 A.L.R.3d 803].)

significantly involved in the nonjudicial foreclosure procedure so as to bring that procedure within the reach of the due process clause.

 Petitioners first contend that there is significant involvement by the state in nonjudicial foreclosures because these foreclosures are pervasively regulated by detailed statutory provisions. It is also argued that the nonjudicial foreclosure procedure when viewed as a whole, requires participation by a state official, the county recorder, and by the state courts. Petitioners rely primarily on our decision in *Connolly Development, Inc.,* v. *Superior Court, supra,* 17 Cal.3d 803, in support of this contention.

In *Connolly,* we held that the mechanics' lien constitutes state action because that lien not only is governed by detailed statutory provisions but also only becomes effective upon recordation with the county recorder and can only be enforced by resort to the state courts. (17 Cal.3d 803, 815.) We also held in *Connolly* that the stop notice procedure constitutes state action because use of that procedure, which was created by statute and is governed by comprehensive statutory regulations, is encouraged and in fact only made possible by virtue of statutory authorization for its enforcement. (17 Cal.3d 803, 815.)

There are several significant differences, however, between the creditors' remedies involved in *Connolly* and the remedy of nonjudicial foreclosure pursuant to a power of sale that is at issue in the case at bar. Unlike the mechanics' lien or stop notice which are authorized by statute and not by the contract of the parties (see also *Adams* v. *Department of Motor Vehicles, supra,* 11 Cal.3d 146, 153) the power of sale exercised by the trustee on behalf of the lender/creditor in nonjudicial foreclosures is a right authorized solely by the contract between the lender and trustor as embodied in the deed of trust. (*Davidow* v. *Corporation of America, supra,* 16 Cal.App.2d 6, 13; *U.S. Hertz, Inc.* v. *Niobrara Farms, supra,* 41 Cal.App.3d 68, 87.) The contractual nature of the power of sale and right of the parties to include such a power in the deed of trust to be exercised in the event of a default was first recognized by this court in 1859. Noting that deeds of trust containing powers of sale were commonly utilized in this state, this court held in *Koch.*v. *Briggs* (1859) 14 Cal. 256, that these contractual powers are valid and enforceable and that merchantable title is transferred pursuant to the exercise thereof.[14]

---

[14]Two years after the decision in *Koch,* this court was presented with the question whether a power of sale could also be included in a mortgage, which otherwise would require judicial foreclosure. (*Fogarty* v. *Sawyer* (1861) 17 Cal. 589.) We concluded that

In 1881, this court, again recognizing the validity of nonjudicial foreclosures of deeds of trust pursuant to powers of sale contained therein, reiterated that this remedy is created by contract and that a sale conducted in accordance with the conditions of the power would result in the transfer of good title to the purchaser. (*Bateman* v. *Burr* (1881) 57 Cal. 480.) In so holding, the court rejected the contention that judicial foreclosure was the proper method of enforcing the security interest embodied in the deed of trust.[15]

In 1917, the Legislature impliedly recognized the validity of this contractual remedy when, acting under its police power, it established certain minimum standards for conducting nonjudicial foreclosures, by placing various restrictions on the creditors' exercise of the power of sale in order to protect the trustor/debtor against forfeiture. (§ 2924; *Smith* v. *Allen* (1968) 68 Cal.2d. 93, 96 [65 Cal.Rptr. 153, 436 P.2d 65]; *Strutt* v. *Ontario Sav. & Loan Assn., supra,* 28 Cal.App.3d 866, 877; see also Burke & Reber, *State Action, Congressional Power and Creditors' Rights; An Essay on the Fourteenth Amendment* (1973) 47 So.Cal.L.Rev. 1, 23-28, 32.) Since that time these statutory protections have been expanded into a comprehensive statutory scheme regulating in detail all aspects of the nonjudicial foreclosure process. (See *Smith* v. *Allen, supra,* 68 Cal.2d 93, 96.)

Petitioners contend that this comprehensive statutory regulation of nonjudicial foreclosures constitutes state action because it encourages and facilitates use of that remedy. This contention does not withstand examination. The nonjudicial foreclosure statutes do not authorize or compel inclusion of a power of sale in a deed of trust or provide for such a power of sale when one has not been included by the parties. Nor do these statutes compel exercise of the power of sale. The decision whether to exercise the power of sale is a determination to be made by the

---

nothing in the law of mortgages in this state would prevent the mortgagor from conferring such a power of sale upon the mortgagee, a practice recognized even under the English common law. Thereafter, in 1872, the Legislature codified this common law right to include powers of sale in mortgages. (§ 2932.)

The validity of powers of sale contained in either deeds of trust or mortgages and the legal effect of the title transferred upon their exercise have also long been recognized by the United States Supreme Court. (See *Bell Mining Co.* v. *Butte Bank* (1895) 156 U.S. 470, 477 [39 L.Ed. 497, 501, 15 S.Ct. 440], and *Scott* v. *Paisley* (1926) 271 U.S. 632, 635 [70 L.Ed. 1123, 1125, 46 S.Ct. 591], wherein the court stated that "the validity of such a contractual power of sale is unquestionable.")

[15]We note that it was not until 1933 that the Legislature enacted section 725a of the Code of Civil Procedure so as to make available the remedy of *judicial* foreclosure of deeds of trust.

creditor. The statutes merely restrict and regulate the exercise of the power of sale once a choice has been made by the creditor to foreclose the deed of trust in that manner. (*Strutt* v. *Ontario Sav. & Loan Assn., supra,* 28 Cal.App.3d 866, 877; see also, *Davidow* v. *Corporation of America, supra,* 16 Cal.App.3d 6, 13; *Barrera* v. *Security Building & Investment Corporation, supra,* 519 F.2d 1166, 1170; *Federal National Mortgage Ass'n.* v. *Howlett, supra,* 521 S.W.2d 428, 432.)

We are also unpersuaded that the state encourages nonjudicial foreclosures by acknowledging the legal validity of the title transferred thereby. Mere recognition of the legal effect of the private arrangements of the lender and trustor is not sufficient to convert the acts of the lender or trustee into the acts of the state for Fourteenth Amendment purposes. As the court in *Barrera* v. *Security Building & Investment Corporation, supra,* 519 F.2d 1166, 1170, cogently stated: "Virtually all formal private arrangements assume, at some point, the supportive role of the state. To hold that the state, by recognizing the legal effect of those arrangements, converts them into state acts for constitutional purposes would effectively erase to a significant extent the constitutional line between private and state action and subject to judicial scrutiny under the Fourteenth Amendment virtually all private arrangements that purport to have binding legal effect." (*Id.,* at p. 1170.)

Similarly, we are not convinced that the state has encouraged or facilitated nonjudicial foreclosure by enacting comprehensive and detailed regulations governing that process. As we stated earlier, these statutory regulations were enacted primarily for the benefit of the trustor and for the greatest part limit the creditors' otherwise unrestricted exercise of the contractual power of sale upon default by the trustor.[16] For this reason, it cannot realistically be claimed that the state, by acting to protect the debtor, has thereby become the partner of the creditor so that the creditor's actions are converted into the actions of the state. (See *Burton* v. *Wilmington Pkg. Auth.* (1961) 365 U.S. 715 [6 L.Ed.2d 45, 81 S.Ct. 856]; *Barrera* v. *Security Building & Investment Corporation, supra.*)[17]

---

[16]Although it is true that section 2924 provides that recitals in deeds of trust shall constitute conclusive evidence in favor of a bona fide purchaser for value that proper notice has been given, we do not think that this provision encourages and facilitates use of nonjudicial foreclosures to a degree sufficient to convert this otherwise private remedy into state action. We express no opinion, however, as to the validity and effect of this specific statutory provision.

[17]Petitioners also suggest that inasmuch as lending institutions such as Wells Fargo Bank are subject to extensive state and federal regulation and are businesses affected with

We also reject petitioners' contention that the nonjudicial foreclosure procedure involves significant acts of the county recorder. ■ We agree with the decision in *Lawson* v. *Smith, supra,* 402 F.Supp. 851, in which it was concluded that the acts of the county recorder required by the California nonjudicial foreclosure statutes are ministerial in nature, and are thus distinguishable from the significant, discretionary acts of the county recorder under North Carolina's nonjudicial foreclosure procedure, which has been held to constitute significant state action. (See *Turner* v. *Blackburn* (W.D.N.C. 1975) 389 F.Supp. 1250, 1258.) ■ Other than these ministerial acts by the county recorder, we note that there is no participation or intervention by any state official or judicial officer prior to the trustee's sale and the vesting of title in the purchaser. (See *Levine* v. *Stein, supra,* 560 F.2d 1175.) This absence of judicial involvement represents another significant difference between the nonjudicial foreclosure of a deed of trust and the mechanics' lien and stop notice in *Connolly,* where court action was required for the enforcement of those liens. Petitioners argue, however, that although judicial intervention may not occur prior to the transfer of title, resort to the state's courts later becomes necessary because the purchaser in order to enforce the rights previously acquired at the trustee's sale ordinarily must bring an action in unlawful detainer against a trustor who will not voluntarily relinquish possession of the property. For this reason, it is argued that when the nonjudicial foreclosure process is viewed as a whole, the state's involvement therein becomes apparent. We disagree. The fact that a purchaser who has acquired rights by virtue of a trustee's deed, like a party who has acquired rights under any other type of contract, may have a right to resort to the courts in order to enforce such previously acquired contractual rights when that becomes necessary, is not sufficient to convert the acts creating these contractual rights into state action. For to hold otherwise, would be to subject every private contract to review under the Fourteenth Amendment. (See *Federal National Mortgage Ass'n.* v. *Howlett, supra,* 521 S.W.2d 428, 437.)

Petitioners' final argument that state action is here involved is based upon the assertion that the state has delegated to private parties the

the public interest, these institutions should be considered as agents of the state for procedural due process purposes. The same suggestion was considered and rejected in *Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 365 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266], where we stated that in light of present authority, it would be unwarranted to subject banks to procedural due process requirements. Petitioners have not pointed to any authority since *Kruger,* and we can find none, which would justify a present departure from that decision.

traditional judicial function of the enforcement of liens on real property. (See *Adams* v. *Department of Motor Vehicles, supra,* 11 Cal.3d 146, 153; see also *Evans* v. *Newton* (1966) 382 U.S. 296 [15 L.Ed.2d 373, 86 S.Ct. 486]; *Marsh* v. *Alabama* (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276].) In *Adams,* the garageman's lien law involved therein permitted the possessory lienholder to sell the owner's vehicle if the owner did not pay the amount due for repairs thereon within the specified time. Noting that at common law, the possessory lienholder had no such power of sale, we concluded that state action was involved on the ground, inter alia, that the state had delegated a power traditionally and exclusively reserved to the state. (11 Cal.3d at p. 153.) Unlike the power of sale in *Adams,* however, the power of sale exercised by the trustee in nonjudicial foreclosure is created by contract, not by statute. Furthermore, as has been noted above, nonjudicial foreclosure under a power of sale is a remedy that has widely been used and recognized in this state for over a century. It can therefore certainly be characterized as a traditional remedy, and as such, has paralleled the foreclosure remedies provided by the state. Thus, it cannot be said that foreclosure under a power of sale has been traditionally and exclusively performed by the state.

We conclude therefore that California's nonjudicial foreclosure procedure does not constitute state action and is therefore immune from the procedural due process requirements of the federal Constitution.

■ We now proceed to determine whether California's nonjudicial foreclosure procedure is subject to the due process requirements of the state Constitution as set forth in article I, section 7, subdivision (a) which states in part that "A person may not be deprived of life, liberty, or property without due process of law. . . ."[18] We held in *Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 366 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266], that California's due process clause (former art. I, § 13), like the due process clause of the Fifth Amendment to the federal Constitution, applied to state, not private action, even though a state action requirement was not expressly set forth therein. No tenable reason

[18]Prior to 1974, the California due process guarantee was set forth in former article I, section 13, which also contained a number of provisions relating primarily to the rights of the criminally accused. This section provided in relevant part that "no person . . . shall be deprived of life, liberty or property without due process of law." Upon revision of the state Constitution in 1974, article I, sections 7 and 15 were added, the latter section setting forth the due process requirement in criminal cases previously contained in former article I, section 13.

has been pointed out to us, and none appears, why a similar requirement of state action is not implicit in article I, section 7.[19]

▇ Although in interpreting the scope of the due process clause under the state Constitution, we are not bound by federal decisions analyzing the state action requirement under the Fifth or Fourteenth Amendments (See *Kruger, supra,* 11 Cal.3d 352, 367, fn. 21), we have found no reason to depart from those cases in the present context. ▇ We therefore conclude for the reasons set forth above in relation to petitioners' federal Constitution claim that the nonjudicial foreclosure of a deed of trust constitutes private action authorized by contract and does not come within the scope of the California due process clause.[20]

Petitioners contend, however, that even if California's due process requirements apply only to action by the state, the Legislature, pursuant to its police power, has a duty to enact such regulations as would enable Californians to enjoy their inalienable right to protect their property as guaranteed by article I, section 1,[21] of the state Constitution. Thus it is urged that the Legislature must provide by statute for adequate notice and an opportunity to be heard before the trustor's property can be sold by nonjudicial foreclosure. This contention is unconvincing. ▇ For, just as the Legislature has full power to enact regulations which limit the means by which individuals may enjoy their rights, as long as there is no interference with constitutional guarantees (see *Werner* v. *Southern Cal.*

---

[19]Petitioners apparently suggest that the fact that the article I, section 7 due process clause, unlike former article I, section 13, was enacted as a separate provision independent from provisions relating to criminal prosecutions, which are clearly governmental action, is indicative of an intent to extend article I, section 7 to reach private action. A contrary intent, however, appears from the analysis by the Legislative Analyst in the voters pamphlet for the General Election of November 5, 1974 (p. 26), which indicates that the due process clause in question, along with several other rights contained in the federal Constitution were proposed for approval so that these same rights would also be contained in the state Constitution.

[20]Petitioners claim that there has been no valid contractual authorization of the sale of the subject property prior to a judicial hearing on the issue of the default. This claim is based upon the adhesive nature of the deed of trust in which the power of sale was conferred on the Bank. The Garfinkles who, although they are not parties to this contract between the Lannings and the Bank, are nonetheless bound by its terms, argue that the Lannings did not knowingly and voluntarily relinquish therein their due process rights to adequate notice and judicial hearing prior to sale of their property upon default. As we have concluded that no due process rights are involved, we need not further discuss this contention.

[21]Article I, section 1 states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Adopted Nov. 5, 1974.)

*etc. Newspapers* (1950) 35 Cal.2d 121, 125 [216 P.2d 825, 13 A.L.R.2d 252]), so it has full power to determine what regulations it should enact to protect and facilitate the individual's enjoyment of such rights.[22]

We find equally unpersuasive petitioners' final contention that notice and a judicial hearing are required prior to the deprivation of the trustor's property, under the common law principle of procedural fairness. This common law doctrine, which is not applicable here, requires only a hearing before the private association or entity involved, and not the judicial hearing which petitioners herein seek. (See *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253]; *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Ezekial* v. *Winkley* (1977) 20 Cal.3d 267 [142 Cal.Rptr. 418, 572 P.2d 32].)

The alternative writ heretofore issued is discharged and a peremptory writ is denied.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

Petitioners' application for a rehearing was denied June 15, 1978. Newman, J., was of the opinion that the application should be granted.

---

[22]Although we are not confronted in the present case with a situation where the parties received no notice of default or of the election to foreclose under the power of sale, we note that there may be instances where the present statutory requirements may not insure that the defaulting trustor is apprised of the lender's decision to exercise the power of sale before the statutory time to cure the default expires. (See fn. 13, *ante.*) The Legislature may therefore want to consider enacting provisions which would require the trustee to make reasonable efforts to ascertain the trustor's present address and to send the required notice to that address. Whether, apart from any question of the validity of the sale, the trustee has an independent duty, as the common agent of the parties (see *Ainsa* v. *Mercantile Trust Co.* (1917) 174 Cal. 504, 510 [163 P. 898]; *Pacific S. & L. Co.* v. *N. American etc. Co.* (1940) 37 Cal.App.2d 307, 310 [99 P.2d 355]) to make reasonable efforts to give actual notice is a question we need not decide in the present case.