J. Elmer **WISCOMBE** and Naomi B. Wiscombe, his wife, Plaintiffs and Respondents,

v.

The **LOCKHART CO.,** Defendant and Appellant.

The **LOCKHART CO.,** Third-Party Plaintiff,

v.

Neil J. **BEARDALL** et al., Third-Party Defendants.

No. 16304.

Supreme Court of Utah.

March 3, 1980.

---

1. Utah, 606 P.2d 1197 (1980).

2. See dissenting opinions in *Allstate Ins. Co. v. Ivie,* supra, note 1.

W. Clark Burt and Robert S. Prince, Callister, Greene & Nebeker, Salt Lake City, for defendant and appellant.

Jackson Howard of Howard, Lewis & Peterson, Provo, for plaintiffs and respondents.

WILKINS, Justice:

This is an appeal from a judgment of the District Court quieting title to certain real property in Plaintiffs and Respondents J. Elmer and Naomi B. Wiscombe (hereafter "Wiscombe") as against Defendant and Appellant Lockhart Company (hereafter "Lockhart"). We affirm. Costs to plaintiffs.

On January 1, 1976, one Beardall, not a party to this appeal, purchased by Uniform Real Estate Contract certain real property located in Mapleton, Utah County, from Wiscombe. The Contract called for annual payments of $15,000 payable on the first day of January of each year with an initial payment of $15,000 made at the time of execution. The $15,000 payment due on January 1, 1977, was not received by Wiscombe. By Notice of Default dated January 31, 1977, and served on Beardall on February 2, 1977, Wiscombe gave Beardall five days in which to remedy his default. Beardall did not do so and quit the premises on or before February 7, 1977.

Unknown to Wiscombe, Beardall had on November 5, 1976, executed and delivered to Lockhart a promissory note secured in part by an Assignment of Contract whereby Beardall assigned to Lockhart all of his rights, title and interest in and to the Uniform Real Estate Contract of January 1, 1976. Lockhart subsequently recorded the Assignment.

Wiscombe first became aware of the existence of the Assignment by way of an abstractor's letter he had ordered prepared on the property. Shortly after learning about the Assignment—the letter report was dated February 14, 1977—Wiscombe's attorney wrote to Lockhart demanding that the Assignment be removed from the title to the subject real property. On March 1 and 2, 1977, Lockhart tendered Wiscombe $15,000 representing the payment due on January 1, 1977, under the Contract in question together with a tender of such additional costs and attorney's fees as had been incurred by Wiscombe. (Lockhart has listed two tender dates because a letter was sent March 1 but without the $15,000 check enclosed. On March 2 the check was actually sent.) By letter dated March 7, 1977, Wiscombe rejected Lockhart's tender. Lockhart refused to remove the Assignment and so Wiscombe brought suit against Lockhart for slander of title and to quiet title in Wiscombe.

After trial held June 8, 1978, the District Court issued its Memorandum Decision on August 1, 1978, quieting title in Wiscombe but dismissing the claim for slander of the

title and further denying Lockhart's counterclaim. Lockhart then brought this appeal.

Lockhart maintains that the District Court erred in not recognizing Lockhart's interest in the real property in question, which interest Lockhart declares arose as a result of the Assignment. We think the District Court was correct in its decision for the following reasons.

■ Fundamental to the law of assignments is the concept that an assignee takes nothing more by his assignment than his assignor had. In *Tanner v. Lawler*,[1] we stated:

> An assignment merely sets over or transfers the interest of one party in certain property to another. Such an assignment does not have the effect of canceling any rights which other persons have in connection with such property. (footnote omitted)[2]

■ The Uniform Real Estate Contract between Wiscombe and Beardall was properly foreclosed by Wiscombe in accordance with the terms of the Contract after Beardall's default. Beardall quit the premises in question on or before February 7, 1977, and so certainly after February 7, the Uniform Real Estate Contract had no further viability of its own. Title to the property remained in Wiscombe no longer subject to the Contract.[3]

Lockhart's tender on March 1 and 2, 1977, was therefore wholly ineffectual because it came almost three weeks after the Contract terminated. There was nothing which could be performed by Lockhart by way of its tender.

Lockhart places great emphasis on the fact that its Assignment was recorded and hence gave constructive notice to Wiscombe of the existence of the Assignment. Citing *Jeffs v. Citizen's Finance Co.*,[4] Lockhart argues that there was a duty on the part of Wiscombe to recognize the interest of Lockhart as an assignee of Beardall's interest under the Uniform Real Estate Contract. This reliance by Lockhart on *Jeffs* is misplaced. In fact, *Jeffs* supports the decision of the District Court. We there stated:

> . . . In our opinion, it is no answer to say that giving notice to the seller, *either actual or constructive*, places the burden on him to seek out one with whom he had no dealing, and volunteer facts so that the assignee of a real estate contract securing a loan may elect whether to perform the real estate contract or not. Such notice at best would alert the seller to the fact that upon performance by the purchaser or his assignee, the seller would have a duty to execute a conveyance.

> Requiring diligence on the part of one holding a real estate contract securing the loan, under a sort of pledge, to seek out and determine the status of its assignor's contractual rights and obligations by way of request . . . or otherwise . . . does not seem to us to place an unreasonable burden on the lender who desires to protect the consideration for which the contract was assigned or pledged. (emphasis added)[5]

CROCKETT, C. J., and MAUGHAN, J., concurs.

STEWART, J., dissents.

HALL, Justice (concurring):

In concurring, I deem it appropriate to point out that Beardalls assigned only their *rights and benefits* under the contract of sale, as distinguished from their *obligations* thereunder. Consequently, Beardalls remained obligated to perform (pay the contract price), and Wiscombes could look *only* to them for such performance, and not to

1. 6 Utah 2d 84, 305 P.2d 882 (1957).

2. *Id.*, 6 Utah 2d at 88, 305 P.2d at 885. *See,* also, *Cheney v. Rucker*, 14 Utah 2d 205, 381 P.2d 86 (1963); *Bank of Salt Lake v. Corporation of the President of Church of Jesus Christ of Latter-Day Saints*, Utah, 534 P.2d 887 (1975).

3. Paragraph 16.A. of the Uniform Real Estate Contract in question.

4. 7 Utah 2d 106, 319 P.2d 858 (1958).

5. *Id.*, 7 Utah 2d at 108, 319 P.2d at 859.

Lockhart. This is so, because by the very nature of the assignment itself, Lockhart remained a stranger to the contract insofar as performance or tender of performance is concerned, and gained no contractual right in regard thereto.