Darwin DIRKS and Jacquelyn Dirks,
Plaintiffs and Respondents,

v.

Paul S. CORNWELL, Catherine L. Cornwell, Wilford W. Goodwill, Dorothy P. Goodwill, Clearfield State Bank, Small Business Administration, Western Bonded Collections, Stewart Title Company of Ogden, and Ogden First Federal Savings and Loan Association and all other persons unknown claiming any right, title, estate, lien, or interest in the real property described in plaintiff's ownership or any cloud upon plaintiff's title thereto, Defendants and Appellants.

No. 860374–CA.

Court of Appeals of Utah.

April 25, 1988.

Earl S. Spafford, Lynn S. Spafford (argued), Spafford, Dibb, Duffin & Jensen, Salt Lake City, for defendants and appellants.

Frank S. Warner, Douglas J. Holmes (argued), Ogden, for plaintiffs and respondents.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

Defendant/appellant Goodwill requests reversal of an adverse summary judgment in a quiet title action and an order vacating the prior sale of the property in question.

On June 10, 1977, Alma and Wanda Butler purchased real property located in Roy, Utah. On May 15, 1978, the Butlers sold this property to Paul S. and Catherine L. Cornwell under a uniform real estate contract. The Cornwells recorded the contract on May 16, 1978.

On March 3, 1980, the Cornwells borrowed $38,000 from defendants Wilford W. and Dorothy P. Goodwill, executing a trust deed on the real property in their favor. Defendants recorded this trust deed on April 3, 1980.

The Cornwells failed to make their payments under the contract. On February 17, 1981, the Butlers notified the Cornwells that they were in default on the contract, and on March 4, 1981, they sent a notice of default and cancellation of contract to the Cornwells, which was recorded on March 12, 1981. The Butlers subsequently sold the real property to plaintiffs, Darwin and Jacqueline Dirks. They did not notify defendants of this sale because they were unaware of defendants' trust deed until March 20, 1981.

Approximately three years later, defendants became aware of the Butlers' resale of the real property to plaintiffs and the apparent loss of their security interest. At no time did they tender to the Butlers the money necessary to bring the Cornwells' contract current.

On March 16, 1984, plaintiffs filed a quiet title action based upon Utah Code Ann. § 78–40–1 (1986). On May 31, 1984, they filed a motion for summary judgment, which the trial court granted on September 7, 1984. The trial court entered a final decree quieting title in favor of plaintiffs on October 5, 1984.

Summary judgment is available and should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 840 (Utah Ct.App.1987); *see also First Sec. Fin. v. Okland Ltd.*, 750 P.2d 195, 197 (Utah Ct.App.1988).

On undisputed facts, defendants appealed the judgment, raising two issues of law: (1) Is it the duty of one who takes by assignment an interest in a real estate contract as security for a loan to seek out and determine the status of his assignor's rights and obligations? (2) Did the repossession of the real property under the contract and the quiet title procedure constitute state action under the fourteenth amendment, thereby giving defendants a right to reasonable notice prior to the destruction of their security interest?

## I

### *Defendants' Failure to Cite to the Record in Their Brief*

We note initially that defendants' brief on appeal fails to conform to Rule 24(a) of the Rules of the Utah Court of Appeals because there are no citations to the record. Rule 24(a) requires that each party make a concise statement of the facts and cite to the pages in the record where those facts are supported. We have previously ruled that if a party fails to adhere to this rule, "the court will assume the correctness of the judgment below. 'This Court need

not, and will not, consider any facts not properly cited to, or [sic] supported by, the record.'" *Koulis v. Standard Oil Co. of Calif.*, 746 P.2d 1182, 1184 (Utah Ct.App. 1987) (quoting *Uckerman v. Lincoln Nat'l Life Ins. Co.*, 588 P.2d 142, 144 (Utah 1978)) (citations omitted). We could, therefore, *sua sponte* disregard defendants' brief on appeal and assume the correctness of the judgment below.[1] However, we also affirm the trial court's judgment on the merits.

II

*Duty of Assignee–Lender to Seek Out His Assignor's Rights and Obligations Under a Real Estate Contract*

■ Under a real estate contract, the buyer has a mortgageable interest in the real property. When the buyer assigns his interest as security for a loan, the assignee-lender acquires a mortgage-like lien on the buyer's interest. *Jack B. Parsons Companies v. Nield*, 751 P.2d 1131, 1133 (Utah 1988); *Lockhart Co. v. Anderson*, 646 P.2d 678, 679–80 (Utah 1982); *see also Rush v. Anestos*, 104 Idaho 630, 661 P.2d 1229, 1233 (1983); *Shindledecker v. Savage*, 96 N.M. 42, 627 P.2d 1241, 1242 (1981); *Sanders v. Ulrich*, 250 Or. 414, 443 P.2d 231, 232 (1968). He does not, however, obtain an interest in the land *per se, Rush*, 661 P.2d at 1234, but becomes entitled to assert the buyer's rights under the contract, including the right to make any payments necessary to avoid default on the contract. *Lockhart*, 646 P.2d at 679–80; *see also Shindledecker*, 627 P.2d at 1243.

■ The assignee-lender takes nothing more by his assignment than his assignor, the buyer, has. *Nield*, 751 P.2d at 1133; *Wiscombe v. Lockhart Co.*, 608 P.2d 236, 238 (Utah 1980); *Sanders*, 443 P.2d at 232. Thus, his interest in the contract is "limited by the amount of equity held by the [buyer] and [is] subject to continued performance under the contract." *Shindledecker*, 627 P.2d at 1242.

■ If the buyer defaults on the underlying real estate contract, the seller can retake the property and terminate the buyer's interest in it in accordance with the terms of the contract. *See Shindledecker*, 627 P.2d at 1243. Because such an event will have the effect of terminating the assignee-lender's interest in the contract, he must take appropriate action to protect his rights. *See Estate of Brewer v. Iota Delta Chapter*, 298 Or. 383, 692 P.2d 597, 601 (1984); *Nield*, 751 P.2d at 1133; *Butler v. Wilkinson*, 740 P.2d 1244, 1257 (Utah 1987); *Wiscombe*, 608 P.2d at 238.

In the present case, the Cornwells, buyers under a real estate contract, assigned their interest in the contract to defendants as security for a loan. Defendants thus obtained an equitable interest in the property limited by the amount of the Cornwell's equity, but subject to extinguishment in the event the Cornwells defaulted on the contract, which they did. The Butlers then cancelled the contract terminating both the Cornwells' and defendants' interests.[2] *See generally Wiscombe*, 608 P.2d at 236.

■ At issue is whether or not the Butlers were required to notify defendants of the Cornwells' default so that defendants could preserve their interest by tendering payment according to the terms of the contract.

Utah case law indicates that the Butlers had no such obligation. This very issue, under indistinguishable facts, was first addressed in *Jeffs v. Citizens Fin. Co.*, 7 Utah 2d 106, 319 P.2d 858 (1958), and, more

---

1. In this particular case, the facts are undisputed on appeal and the issue before us is solely a matter of law, so this sanction has little impact. However, it can be a weighty burden for a non-complying party in a case in which facts are controverted, such as *Koulis*, 746 P.2d at 1182.

2. In this case, the Cornwells and defendants used a trust deed rather than an actual assignment document to memorialize defendants' security interest. Their use of that document, even with recordation, does not change the fact that the security interest attached only to the Cornwells' interest, as contract buyers, in the real property. The trust deed effected no more than an assignment of the Cornwells' contract rights as security for the loan extended by defendants.

recently, in *Wiscombe v. Lockhart Co.*, 608 P.2d at 236. It was most recently addressed in *Jack B. Parson Companies v. Nield*, 751 P.2d 1131 (Utah 1988).

In *Jeffs*, the assignee-lender, like defendants, argued that a uniform real estate contract cannot be terminated without giving the purchaser and his assignee notice of intention to forfeit and a reasonable time in which to cure. The court found that the seller was not required to notify the assignee-lender, but that the assignee had the duty of notifying the seller of his interest in the contract. *Jeffs*, 319 P.2d at 859. The court stated:

> In our opinion it is no answer to say that giving notice to the seller, either actual or constructive, places the burden on him to seek out one with whom he had no dealing, and volunteer facts so that an assignee of a real estate contract securing a loan may elect whether to perform the real estate contract or not. . . .
>
> Requiring diligence on the part of one holding a real estate contract securing a loan, under a sort of pledge, to seek out and determine the status of his assignor's contractual rights and obligations by way of request, discovery procedure or otherwise, and to require him to make a tender of full performance which his assignor has failed to effectuate does not seem to us to place an unreasonable burden on the lender who desires to protect the consideration for which the contract was assigned or pledged.

*Id.*

The *Wiscombe* court, relying upon *Jeffs*, found that the seller had no duty to inform an assignee-lender of the termination of the real estate contract which secured the assignee-lender's loan to the buyer. *Wiscombe*, 608 P.2d at 238. The *Nield* court found similarly. *Nield*, 751 P.2d at 1133.

Defendants' attempt to distinguish *Wiscombe* fails because they misread the *Wiscombe* facts. They state that defendants "obtained their security interest *before the foreclosure took place*, whereas in *Wiscombe*, the security interest was obtained some three weeks after the assignor no

longer had an interest to assign." In fact, the lenders in *Wiscombe* obtained their security interest prior to the foreclosure. The *Wiscombe* lenders then unsuccessfully attempted to tender payments according to the terms of the contract three weeks after the contract had been terminated. *Wiscombe*, 608 P.2d at 238.

Defendants argue that recordation of their assignment gave the Butlers constructive notice. However, under *Jeffs*, *Wiscombe*, and *Nield*, recordation of the assignment is immaterial. The *Wiscombe* court found that the assignee-lender's recordation of its assignment did not place a duty on Wiscombe, the seller, to notify the assignee-lender of the default and subsequent action to terminate the contract. *Wiscombe*, 608 P.2d at 238.

The *Nield* court found that, even though the assignee had recorded his assignment, "because it had no actual notice of the assignment to [the assignee], [the seller] was under no legal obligation to inform [the assignee] that [the assignor] had agreed . . . to terminate the contract and extinguish its interest." *Nield*, 751 P.2d at 1133. *See also Shindledecker*, 627 P.2d at 1243; *Davis v. Rede Realty, Inc.*, 41 Wash. App. 527, 704 P.2d 1250, 1251 (1985); *Kendrick v. Davis*, 75 Wash.2d 456, 452 P.2d 222, 228 (1969).

Thus, we sustain the trial court and find that the Butlers did not have a duty to inform defendants of the Cornwells' default and the termination of their contract.

## III

### *Due Process*

The due process clause of the fourteenth amendment of the United States Constitution provides that: "nor shall any State deprive any person of life, liberty, or property, without due process of law." Defendants argue that they were deprived of due process under the fourteenth amendment, and were entitled to notice and hearing concerning the Cornwells' default prior to loss of their interest in the contract. "Because the [fourteenth] Amendment is directed at the states, it can be violated only

by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). Defendants state that the parties' use of the courts to enforce the repossession provisions of the Cornwells' contract constitutes state action for purposes of the due process clause.

Defendants rely on several well-known Supreme Court cases to make this argument: *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); and *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). We note at the outset that these cases deal with racial discrimination issues which are substantially distinct from the present issue. In *Turner v. Impala Motors*, 503 F.2d 607, 611 (6th Cir.1974), a self-help repossession case, the Sixth Circuit stated that:

> We are likewise persuaded that *Reitman* cannot be relied upon to justify a finding of state action here.... [W]e view *Reitman* as dealing with a state attempt to accomplish indirectly what it was prohibited from doing directly. We cannot ignore the fact that the context of onerous racial discrimination in which the case was set demanded special scrutiny. The injustices of racial discrimination cast a different shadow than that of the case now before us.

Thus, we agree and decline to follow this line of cases in determining whether defendants' deprivation was brought about by state action.

■ While the Supreme Court has never "attempted the 'impossible task' of formulating an infallible test for determining whether the State 'in any of its manifestations' has become significantly involved in private discriminations," *Reitman v. Mulkey*, 387 U.S. at 378, 87 S.Ct. at 1632, it has set forth general guidelines for determining what constitutes state action. State action cannot be found unless there is a " 'sufficiently close nexus' between the state and the challenged act of foreclosure," *Northrip v. Federal Nat'l Mortgage Ass'n*, 527 F.2d 23, 32 (6th Cir.1975),

or the challenged conduct is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. at 937, 102 S.Ct. at 2753. "Fairly attributable" is defined as follows:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state [sic] or by a person for whom the State is responsible. ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation wherever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Id.; see also Gerena v. Puerto Rico Legal Serv., Inc.*, 697 F.2d 447, 449 (1st Cir.1983). Therefore, defendants must show that (a) the state created the right which caused their deprivation, and (b) a person who can be fairly said to be a state actor caused the deprivation.

In determining whether the state created the right which caused the deprivation, although a procedural scheme created by state statute may be considered a product of state action and, therefore, possibly subject to constitutional restraints, *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2755, a statutory scheme which merely permits a private individual to pursue a privately contracted-for remedy is not considered to be "state machinery." The *Northrip* court found the district court correctly observed that a state foreclosure statute "did not authorize a private party to perform a government function and therefore did not constitute state action." *Northrip*, 527 F.2d at 25. In fact, the foreclosure statute did not create the power of sale foreclosure, but the state, by enacting the statute, acted to regulate and standardize a recognized practice. *Id.* at 27.

The Sixth Circuit, in finding the enforcement of a self-help repossession statute to not constitute state action, stated:

It is clear that in this case the state did not exert any control or compulsion over the creditor's decision to repossess. The private activity was not commanded by the simply permissive statute. While mere existence of the statute might seem to suggest encouragement, we conclude that the effect of the statute is only to reduce a creditor's risk in making repossessions. As a practical matter, a creditor's decision is more likely to be principally influenced by the economics of the situation than by the presence of a permissive statute.

We fail to see where the creditor has sought to invoke any state machinery to its aid. Rather, the creditor has simply relied upon the terms of its security agreement pursuant to the private right of contract. Assuming that the statute was non-existent, the remedy of self-help repossession could still be utilized based on its common law heritage and the private right to contract. *We fail to see how the creditor is attempting to enforce any right in reliance upon a constitutional or statutory provision as in Reitman or is even asserting any state-created right. Rather, we see a creditor privately effectuating a right which was created in advance by contract between the parties. At best, the right is one that is merely codified, but not created, in the statute.*

*Turner v. Impala Motors,* 503 F.2d 607, 611–12 (6th Cir.1974) (footnotes omitted) (citations omitted) (emphasis added). The California Supreme Court has similarly found:

We are also unpersuaded that the state encourages nonjudicial foreclosures by acknowledging the legal validity of the title transferred thereby. Mere recognition of the legal effect of the private arrangements of the lender and trustor is not sufficient to convert the acts of the lender or trustee into the acts of the state for Fourteenth Amendment purposes. As the court in *Barrera v. Security Building & Investment Corpora-*

*tion, supra,* 519 F.2d 1166, 1170 [ (5th Cir.1975) ], cogently stated: "Virtually all formal private arrangements assume, at some point, the supportive role of the state. To hold that the state, by recognizing the legal effect of those arrangements, converts them into state acts for constitutional purposes would effectively erase to a significant extent the constitutional line between private and state action and subject to judicial scrutiny under the Fourteenth Amendment virtually all private arrangements that purport to have binding legal effect.

*Garfinkle v. Superior Court,* 21 Cal.3d 268, 146 Cal.Rptr. 208, 215, 578 P.2d 925, 932 (1978).

The statutory scheme challenged by defendants is comparable to that addressed by the Sixth Circuit in *Turner* and the California court in *Garfinkle.* Defendants argue that the state provided the judicial system and the statutory support which allowed the Butlers to cancel the Cornwells' contract and plaintiffs to obtain good title to the property. As in *Turner,* these statutory mechanisms did not create a right, but, instead, simply reduced the creditors' risk in enforcing rights created in advance by the parties' contracts. " 'State action does not necessarily result whenever a state renders any sort of benefit or service to a private entity or seeks to regulate private activity in any degree whatever.' " *Northrip,* 527 F.2d at 29 (quoting *Northrip v. Federal Nat'l Mortgage Ass'n,* 372 F.Supp. 594, 597 (E.D.Mich.1974)). As in *Garfinkle,* we find holding that the state, by recognizing the legal effect of the parties' contractual arrangements, converts these arrangements into state acts for constitutional purposes would make virtually all private contracts into state actions for constitutional purposes. We decline to do this. Therefore, we find that the state did not create the rights leading to defendants' deprivation of their interest in the contract, and, thus, that defendants have not made the required showing on the first prong of the "fairly attributable" test. *See Pease v. Havelock Nat'l Bank,* 351 F.Supp. 118 (D.Neb.1972).

Having found that defendants have not made the requisite showing on the first prong of the "fairly attributable" test, we find it unnecessary to address the second prong of the test, and hold that there was no violation of the due process clause of the Constitution giving defendants a right to notice prior to the destruction of their security interest.

The trial court's judgment is affirmed. Defendants are assessed costs.

BILLINGS and ORME, JJ., concur.