DRAPER v. J. B. & R. E. WALKER, Inc.

No. 7214. Decided April 13, 1949. (204 P. 2d 826.)

See 59 C. J. S., Mortgages, sec. 474; 36 Am. Jur. 933. Damages for refusal to discharge mortgage on real property, note, 56 A. L. R. 335.

*McKay, Burton, & White,* of Salt Lake City, for appellant.

*D. M. Draper,* of Salt Lake City, for respondent.

LATIMER, Justice.

In 1935, the plaintiff, Pherrell Draper, became the owner of two tracts of land in Salt Lake County. The Old Mill Tavern, Inc. owned adjoining property and subsequently claimed title to plaintiff's lands by virtue of certain tax

sale proceedings. After recording tax deeds to the property, Old Mill Tavern, Inc., on February 2, 1942, commenced an action in the district court to quiet title to the lands. On June 24, 1943, the district court entered its decree declaring the tax deeds to be invalid and quieted title in the plaintiff.

Before the decree was entered and while the action was still pending, the Old Mill Tavern executed and delivered a mortgage upon the lands in question to the defendant J. B. & R. E. Walker, Inc. The date of the note and mortgage does not appear, but the mortgage was filed for record in May, 1942, which was some three months after the suit was started, but some thirteen months before judgment was entered declaring the tax deeds void. The execution and recording of the mortgage was done without the knowledge or consent of the plaintiff who first learned of the transaction some time in 1947 as a result of having his abstract of title brought to date for the purpose of procuring a loan on the property. Plaintiff consulted an attorney regarding what he should do to have the cloud upon his title removed and the attorney prepared a release to be presented to and signed by defendants. The instrument together with a written demand that it be signed and executed by an officer of the defendant corporation was sent to the defendant by registered mail with a return receipt requested. Although the signed receipt was returned by the postal authorities, a reply to the letter was not received and the mortgage was not released. Plaintiff testified he made several attempts to reach Mr. J. B. Walker, an officer of defendant corporation, by telephone but was informed on each occasion that he was out of the office. He further testified that on one occasion he attempted to contact Mr. Walker personally by traveling from Salt Lake City to Ogden, Utah, a distance of some forty miles, after being told by his attorney that he, the attorney, thought the plaintiff could reach him there. This trip was unsuccessful as were two subsequent personal visits to defendant's offices

and several additional attempts to reach J. B. Walker by telephone. Plaintiff was finally told by an employee of the defendant that the matter had been turned over to Mr. Burton, defendant's attorney. Upon contacting Mr. Burton, plaintiff was informed that defendant would release the mortgage if plaintiff would agree, in writing, to pay one half of the expense of having a surveyor definitely fix the boundary between plaintiff's land and the Old Mill Tavern's adjoining property. According to plaintiff he refused to participate in this proposed settlement. Two subsequent meetings between plaintiff and Mr. Burton also ended without agreement. Plaintiff testified, however, he needed the loan so badly he finally informed Mr. Burton he would accede to defendant's demand and agreed to meet in Mr. Burton's office that evening at five thirty to execute the agreement. Becoming exasperated when Mr. Burton had not arrived by about six fifteen, plaintiff left, contacted his attorney and instructed him to commence this action.

In his complaint, plaintiff, in addition to setting forth his ownership of the property in question, alleges, first, that both the Old Mill Tavern, Inc., and the defendant knew, or in the exercise of due care should have known, that the tax deeds acquired by Old Mill Tavern, Inc. were void and that the act of placing a mortgage on the property while the suit to quiet title was pending constituted a willful and wrongful clouding of plaintiff's title; Second, that defendant wrongfully refused to release the mortgage after demand to do so had been made upon it by the plaintiff.

In the prayer of his complaint, plaintiff asked the court to declare the mortgage null and void; that defendant be required to execute a release of the mortgage; and, that plaintiff be awarded damages in the sum of $547. The damages he claimed to have suffered were specifically alleged to be as follows: $150 as the amount he was required to deposit with a mortgagee as security against the cloud upon the property; $225 for attorneys fees for the preparation of papers and prosecution of his action to quiet

title; $172 as the amount he lost in time and wages in negotiating for a release and procuring data for his counsel in this action.

In its answer, defendant admitted ownership of the property in plaintiff, disclaimed any interest therein and consented that judgment quieting plaintiff's title be entered against the defendant. It denied that it was charged with knowledge that its tax title was void at the time the mortgage was execued, and denied that it had refused to release the mortgage.

The trial court found plaintiff had suffered damages in the amount of $225 for attorney's fees and $172 for plaintiff's loss of wages and time. A judgment was entered quieting title in the plaintiff, ordering defendant to execute a release of the mortgage and decreeing that plaintiff recover damages in the amount of $397, together with his costs.

The single question to be decided on this appeal is whether the court below committed error in its award of damages. Under the pleadings the first issue raised is whether defendant knew, or ought to have known, when it accepted the mortgage and had it recorded that the Old Mill Tavern's tax deed was void. The record on this question discloses that Old Mill Tavern, Inc. instituted the original action to quiet title to plaintiff's property on the strength of its tax titles. Absent a contrary showing, that action alone would indicate the Old Mill Tavern, Inc. believed it had the right to mortgage the land. There is no affirmative showing that the Old Mill Tavern, Inc. acted in bad faith and no reason to suspect that the defendant was acting in concert to disparage plaintiff's title. Had plaintiff introduced evidence showing the tax deed to be patently void on its face or had he established that defendant conspired with the Old Mill Tavern, Inc. to escape an adverse ruling in the suit to quiet title or had he introduced any other evidence indicating the mortgage

was recorded in bad faith to cloud plaintiff's title he might have established his right to recover such damages as are recoverable under a theory of slander of title, but nothing of this kind appears in the record. Inasmuch as the record establishes that the mortgage was executed long before the court determined the tax deeds to be invalid and the only evidence in the record is that the mortgage was executed and recorded at a time when Old Mill Tavern, Inc. had color of title to the property under their tax deeds, the plaintiff failed to sustain his allegation that defendant willfully and wrongfully clouded his title.

The other wrongful act of which the plaintiff complains is that defendant refused to execute the release tendered it. This phase of the case presents an interesting factual situation. The reason defendant gave to justify its refusal was that it wanted a survey made to establish the dividing line between plaintiff's property and the adjoining land belonging to the Old Mill Tavern, Inc.; that it demanded that plaintiff advance one half of the cost of having the survey made before the release was executed; and that plaintiff refused to comply with the demand. Plaintiff, in endeavoring to establish that defendant's refusal to release the mortgage was motivated by bad faith, relies on the following facts: That the demand that a survey be made to fix plaintiff's property line was made, not by the owner of the land adjoining that of the plaintiff (in this case Old Mill Tavern, Inc.) but rather, by the defendant, the mortgagee of plaintiff's land; that J. B. Walker was one of the principal officers of both the defendant and the Old Mill Tavern, Inc. and that although he knew defendant had no legitimate claim to or interest in plaintiff's land because of the prior adjudication declaring Old Mill Tavern's, Inc. tax title invalid, an attempt was nevertheless made by him, acting on behalf of the defendant, to coerce plaintiff into an agreement to pay one half the cost of the proposed survey. Plaintiff, however, overlooks the fact that defendant was either a mortgagee or creditor of the

Old Mill Tavern, Inc. and as such had an interest in fixing the boundary line with certainty, particularly if the line was encroaching on property still owned by the Old Mill Corporation.

If the law imposes a duty upon a mortgagee to release a mortgage once it has been determined that the encumbrance covers property owned by some one other than the mortgagor then the argument made by plaintiff might be sufficient to sustain the judgment of the court below. If, however, there is no duty to affirmatively act, but only to disclaim in event of suit, then no recovery may be had regardless of the unreasonableness of the refusal. At the common law, no action for damages would lie because of a refusal to release a mortgage or discharge a lien or claim against property, *Barquin* v. *Hall Oil Co.*, 28 Wyo. 164, 201 P. 352, 202 P. 1107; *Hasquet* v. *Big West Oil Co.*, 9 Cir., 29 F. 2d 78; *Morrill* v. *Title Guaranty & Surety Co.*, 94 Wash, 258, 162 P. 360, on rehearing 163 P. 733. Plaintiff argues that although the cited cases announce the foregoing rule, language is to be found in the Morrill case to the effect that damages in this type of case are allowed as a matter of equity and that the decree of the court below can be sustained on this theory. A careful reading of the *Morrill* case will disclose that the court's reference to the right of an owner of real property to commence an action for the removal of a cloud upon his title before the Chancellor was not intended to mean that equity would circumvent the law in this type of case by allowing damages which the common law courts would not recognize. Where a court of equity has jurisdiction of the subject matter it has discretionary power to permit recovery of such damages as the common law courts would allow in order to do complete justice between the parties in one action. However, where damages were not recoverable in the law courts they were denied by the equitable tribunals. The equitable relief referred to in the Morrill case, therefore, was not the recovery of damages, as plaintiff contends,

but rather, relief in personam according to established equitable principles.

The common law rule denying the recovery of damages where defendant refuses to release or discharge a mortgage, lien or claim against real property has been modified by statute in most states including Utah. ■ In this state we have a statute granting to a mortgagor the right to recover damages resulting from the failure of his mortgagee to release a satisfied mortgage. Section 78-3-8 U. C. A. 1943, gives this right in the following language:

"If the mortgagee fails to discharge or release any mortgage after the same has been fully satisfied, he shall be liable to the mortgagor for double the damages resulting from such failure. Or the mortgagor may bring an action against the mortgagee to compel the discharge or release of the mortgage after the same has been satisfied; and the judgment of the court must be that the mortgagee discharge or release the mortgage and pay the mortgagor the costs of suit, and all damages resulting from such failure."

Inasmuch as the scope of the statute is clearly limited to the mortgagee-mortgagor relationship, it has no application to the case at bar. Here the demand that the release be executed was made by one who was not a morgagor upon one who had never occupied the position of mortgagee to this plaintiff or any one in privity with him.

Under these circumstances this case must be decided under the common law rule denying recovery of damages. While many of the legislatures of this country have enacted statutes permitting a mortgagor to recover damages against his mortgagee and at least one state has, by statute, permitted an injured property owner to recover damages flowing from the refusal of a mortgagee to release a mortgage upon property in which the mortgagor had no interest, *Van Doren* v. *Wolf,* 112 Kan. 380, 211 P. 144, our legislature has not seen fit to extend the rule beyond the mortgagor-mortgagee relationship.

We conclude that by limiting the relief to the mortgagor the legislature intended that the common law rule should be controlling in other instances. We are convinced the facts and circumstances of this case do not bring ▪ plaintiff within any rule of common law which would permit him to recover damages. Accordingly, the judgment is reversed and the cause remanded with directions to enter judgment as prayed except that damages are not to be awarded. Each party to bear its costs on appeal.

PRATT, C. J., and WADE, WOLFE and McDONOUGH, JJ., concur.