JACK B. PARSON COMPANIES, formerly known as Parson Asphalt Products, Inc., Plaintiff and Respondent,

v.

Layle H. NIELD and Mrs. Layle H. Nield, Defendants, Third–Party Plaintiffs, and Appellants,

v.

FINANCIAL HOLDING CORPORATION, Utah Northern Development Corporation, Keith Biesinger and Karl Smith, Third–Party Defendants and Respondents.

No. 19910.

Supreme Court of Utah.

March 7, 1988.

George W. Preston, Logan, for Nields.

LaVar E. Stark, Ogden, for Parson Companies.

Harold R. Stephens, Salt Lake City, for Utah Northern Development Corp.

DURHAM, Justice:

Defendants Mr. & Mrs. Layle H. Nield (Nield) appeal from the trial judge's ruling granting Jack B. Parson Companies (Parson) title and damages in a quiet title action. Nield argues that damages were inappropriate and that the trial court misconstrued the real estate contract. Nield also appeals from the assessment of $1.00 in nominal damages against third-party defendant Biesinger.

Parson sold a parcel of commercial real estate to Utah Northern Development Corporation (UND), using a standard form uniform real estate sales contract. The parcel was subject to a trust deed in favor of the Bank of Utah securing a $300,000 loan. The terms of the contract included a purchase price of $409,000, with a down payment of $40,900, the balance to be paid in semi-annual installments and quarterly interest payments. The contract provided the seller with three alternative courses of action in the event of a default: a release from his obligations to convey the property and the right to keep all installments paid by buyer, the right to bring an action to recover delinquent installments, and the right to declare the entire amount due and payable. The $40,900 down payment was financed with money loaned to UND by Nield at an annual interest rate of 50 percent. Biesinger, a lawyer and an officer of UND, negotiated the terms of the loan with Nield. After the down payment was made, UND assigned its contract rights to Nield as security for the loan.

The assignment was recorded in Box Elder County on December 18, 1981. UND failed to make the quarterly interest payments to Parson, and as a result, Parson negotiated with Biesinger an addendum to the original sales contract and an escrow agreement. The addendum provided UND with extensions of time for the delinquent payments, and in consideration for the extensions, UND delivered into escrow a quitclaim deed in favor of Parson. Nield was not informed of this default, the addendum, or the accompanying quitclaim deed. UND again failed to make required payments, and Parson duly recorded the quitclaim deed on April 22, 1982. On August 4, 1982, Parson discovered the assignment of the original contract from UND to Nield. Parson notified Nield of the delinquency in payments and offered him the opportunity to bring the contract payments current. Nield refused to make payments or to release the record of assignment. At this time, because the value of the land had declined and the trust deed to the Bank of Utah was already in place, any interest Nield might have held was essentially worthless. On April 20, 1983, Nield delivered to Parson a quitclaim deed and release of assignment, reserving by stipulation all

rights he may have had as a result of the contested transactions.

At trial, Parson was awarded clear title and $8,920.83 in damages from Nield for wrongfully refusing to release his assignment of interest from August 5, 1982, to April 20, 1983. The damages were determined by estimating the amount of interest that had accrued on the trust deed note to the Bank of Utah while the cloud on the title existed. Nield was awarded one dollar in nominal damages from third-party defendant Biesinger for committing a "technical wrong" by failing to protect Nield's interest.

Nield argues on appeal that the award of damages against him was unjustified, that the trial court incorrectly permitted forfeitures under the original contract, that third-party defendant Biesinger committed more than a technical breach of fiduciary duty, and that the trial court incorrectly admitted opinion evidence at trial.

 We examine first the nature of Nield's interest. Nield received an assignment of UND's interest in the real estate contract between UND and Parson. An assignment of an interest in a contract gives the assignee the same rights as the assignor and nothing more. *See Tanner v. Lawler*, 6 Utah 2d 84, 88–89, 305 P.2d 882, 885, *partially modified on reh'g*, 6 Utah 2d 268, 311 P.2d 791 (1957); *Wiscombe v. Lockhart Co.*, 608 P.2d 236, 238 (Utah 1980). The assignment made by UND to Nield was for security purposes only, was not an "out and out transfer," and had no "significance whatever once the loan was paid." *Jeffs v. Citizens Fin. Co.*, 7 Utah 2d 106, 107, 319 P.2d 858, 858 (1958). The interest of an assignee under such circumstances has been compared to and treated as a mortgage. *Lockhart Co. v. Anderson*, 646 P.2d 678, 679–80 (Utah 1982). However, it is the responsibility of such an assignee to ascertain the status of the assignor's rights and duties under the contract, *see Jeffs*, 7 Utah 2d at 107, 319 P.2d at 858; *Wiscombe*, 608 P.2d at 238, and when a real estate contract is voluntarily terminated in good faith by the vendor and the assignor, the interest of a judgment creditor of the vendee is also terminated. *Cf. Butler v. Wilkinson*, 740 P.2d 1244, 1257–58 (Utah 1987); *Davis v. Rede Realty, Inc.*, 41 Wash.App. 527, 529, 704 P.2d 1250, 1251 (Ct.App.1985). In fact, because it had no actual notice of the assignment to Nield, Parson was under no legal obligation to inform Nield that UND had agreed, through the addendum and by placing a quitclaim deed into escrow, to terminate the contract and extinguish its interest. *See Jeffs*, 7 Utah 2d at 108, 319 P.2d at 859; *Davis*, 41 Wash.App. at 529, 704 P.2d at 1251. This is true even though Nield had recorded his assignment prior to the negotiation of the addendum and the quitclaim from UND to Parson. *Wiscombe*, 608 P.2d at 238. Nonetheless, Parson offered Nield the opportunity, as provided for in the contract, to fulfill UND's obligations and take title to the property.

Nield declined to do so, presumably because the low value of the land at that time made the expense of assuming the contract greater than the value of the land itself. Indeed, as the creditor second in line to the Bank of Utah, Nield had no actual financial interest on which to foreclose. Nield did not agree, however, to release his recorded assignment.

 The trial court awarded damages against Nield for refusing to "cleanse" title. The damages were based upon the amount of interest Parson paid on its loan from Bank of Utah while the title was held up. There is no basis in law for this award. Quiet title actions are statutory in nature, *Holland v. Wilson*, 8 Utah 2d 11, 327 P.2d 250 (1958), and Utah Code Ann. §§ 78–40–1 through –13 (1987), authorizing quiet title actions, does not include any remedies for refusing to release title. Although Utah Code Ann. § 57–3–8 (1986) allows damages when a mortgagee fails to discharge or release a mortgage after it has been fully satisfied, Utah case law renders that statute inapplicable to this factual situation.

Both the applicability of section 57–3–8 and the availability of damages for a refusal to "cleanse" title are controlled by the holding in *Draper v. J.B. & R.E. Walker, Inc.*, 115 Utah 368, 204 P.2d 826 (1949). In

*Draper*, the plaintiff was the owner of two tracts of land that adjoined land owned by Old Mill Tavern, Inc. After recording tax deeds to the plaintiff's property, Old Mill Tavern commenced an action to quiet title to the land. Before a decree was entered quieting title, the owner of the tavern delivered a mortgage to defendant Walker; the mortgage was filed thirteen months before the district court held the tax deeds invalid and quieted the title. The plaintiff requested that the defendant release the mortgage once the decree had been entered. When the defendant did not do so, the plaintiff sued for damages. This Court held that there was no affirmative duty to release the lien and that "at the common law, no action for damages would lie because of a refusal to release a mortgage or discharge a lien or claim against property." *Id.* at 374, 204 P.2d at 829. Nor did section 57–3–8 (then section 78–3–8) apply. The Court stated, "[The] scope of the statute is clearly limited to the mortgagee-mortgagor relationship.... [T]he demand that the release be executed was made by one who was not a mortgagor upon one who had never occupied the position of mortgagee to this plaintiff or any one [sic] in privity with him." *Id.* at 375, 204 P.2d at 830.

Although UND's assignment to Nield was in the nature of a mortgage, *Lockhart Co. v. Anderson*, 646 P.2d 678, 679–80 (Utah 1982), it was not an actual mortgage agreement. Further, Parson was never in the position of mortgagor or mortgagee with Nield, and a strict construction of section 57–3–8 makes it inapplicable to Nield and Parson's relationship. *See Shibata v. Bear River State Bank*, 115 Utah 395, 403, 205 P.2d 251, 254 (1949) (statute should be strictly construed because it is penal in nature). The language of the statute itself suggests that it is inapplicable. Section 57–3–8 operates only upon satisfac-

tion of a mortgage, a situation which is altogether different from Nield's opportunity to redeem a real estate contract and his refusal to release a recorded assignment upon declining that opportunity. Thus, neither section 57–3–8 nor the common law permits recovery of damages for refusal to clear title.[1]

The damages awarded here resemble those available in an action for slander of title; it is possible that the trial judge awarded them under the mistaken impression that such a claim had been made. Apparently, Parson also believes that this was a slander of title action or that the same measure of damages should be available. His brief cites several cases to support the award of special damages, all of which were based on an action for slander of title.

The elements of slander of title actions are well-settled and are not present here. A slander of title action, which is variously known as an injurious falsehood or disparagement action, consists of the willful recordation or publication of untrue material that is disparaging to another's title. *Den–Gar Enter. v. Romero*, 94 N.M. 425, 430, 611 P.2d 1119, 1124 (Ct.App.1980). The plaintiff must prove that he was specifically injured by the action. *Id.* Malice is also an element of the cause of action. *Howarth v. Ostergaard*, 30 Utah 2d 183, 185, 515 P.2d 442, 444 (1973). Such malice may either be implied in law or be affirmatively proven by the plaintiff, which requires a showing that the wrong was done with the intent to injure, vex, or annoy. *Id.* In Nield's case, the recordation of the assignment occurred before UND's interest was extinguished and, thus, before it was prejudicial to Parson's interest. Nield had the right to record at the time he did so. Because no cause of action can be sustained under statute or under the common

---

1. Perhaps the legislature recognized this problem when, in 1985, it enacted Utah Code Ann. §§ 38–9–1 through –4 (Supp.1987) entitled "Penalty for Wrongful Lien." The statute provides penalties for one who "claims an interest in, or a lien or encumbrance against, real property, who causes or has caused a document asserting that claim to be recorded or filed in the office of the county recorder, who knows or has reason to know that the document is forged, ground-less, or contains a material misstatement or false claim...." Utah Code Ann. § 38–9–1 (Supp.1987). Although this section only applies to liens and encumbrances which are wrongful from inception, and not to documents which are justifiably recorded, as is the case here, its enactment suggests that the legislature recognized the absence of relief under the common law for wrongful refusal to clear title.

law in these circumstances and because the facts do not sustain an action for slander of title, the damages awarded against Nield should be reversed.

■ Nield argues that the addendum to the uniform real estate contract was actually a rescission and that because he was not a party to it, his interest should not be extinguished upon termination or forfeiture under the original contract. The addendum itself, however, states that it was part of the original contract and did not operate as a rescission. Similarly, Biesinger did not enter into a fiduciary relationship with Nield and therefore could not breach a fiduciary duty. Further, the evidence does not show damage to Nield from Biesinger's acts, because Parson afforded Nield the opportunity to redeem the contract. Finally, there is no merit to Nield's contention that evidence was improperly admitted at trial.

We hold that there is no basis for the damages awarded Parson and reverse that portion of the judgment. We also reverse the award of nominal damages to Nield. The remainder of the lower court's judgment is affirmed.

HALL, C.J., STEWART, Associate C.J., and HOWE and ZIMMERMAN, JJ., concur.